STATE OF NORTH CAROLINA v. RAYMOND DAYLE ROWSEY

No. 490A93

(Filed 31 July 1996)

**1. Jury § 227 (NCI4th)— capital murder—jury selection— death qualification—equivocal answers**

There was no error in a capital murder prosecution in granting the State's motion to excuse for cause a prospective juror where the record shows that the prospective juror gave equivocal and conflicting answers about whether he would be able to set aside his own beliefs with respect to the death penalty and left the impression that he would be unable to fairly and impartially follow the law.

**Am Jur 2d, Jury §§ 191, 192, 228.**

**Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.**

**2. Evidence and Witnesses § 3218 (NCI4th)— capital murder—testimony by accomplice—inconsistent with plea bargain—issue of credibility**

The trial court in a capital murder prosecution properly denied defendant's motion to prohibit an accomplice from testifying that he did not plan or participate in the killing or the robbery. Although defendant contended that this was inconsistent with the accomplice's guilty plea and that this amounted to presenting false testimony to the jury, defendant failed to show that any of the accomplice's testimony was false or that the State knowingly and intentionally used false testimony to obtain defendant's conviction. Any inconsistency in the testimony with guilt or with the plea agreement is relevant to credibil-

ity and defendant had ample opportunity to cross-examine the accomplice.

**Am Jur 2d, Evidence § 1485; Homicide §§ 345, 429; Trial §§ 504, 821, 822, 1362, 1363, 1401.**

**Necessity of, and prejudicial effect of omitting, cautionary instruction to jury as to accomplice's testimony against defendant in federal criminal trial. 17 ALR Fed. 249.**

3. **Criminal Law § 468 (NCI4th)— capital murder—prosecutor's argument—State's witness as accomplice**

There was no plain error in a capital murder prosecution where the prosecutor stated in his closing argument that a State's witness, Steele, was defendant's accomplice. When viewed in context, the prosecutor's argument was not that Steele's mere presence at the scene of the crime showed that he was guilty of the crimes, but explained that the prosecutor entered into a plea bargain with Steele because defendant was more culpable and Steele's testimony was necessary to prove beyond a reasonable doubt that defendant shot the victim.

**Am Jur 2d, Evidence § 1485; Trial §§ 504, 821, 822, 1362, 1363, 1401.**

**Necessity of, and prejudicial effect of omitting, cautionary instruction to jury as to accomplice's testimony against defendant in federal criminal trial. 17 ALR Fed. 249.**

4. **Criminal Law § 830 (NCI4th)— capital murder—instructions—accomplice testimony**

There was no plain error in a capital murder prosecution where defendant argued that the court's instruction on accomplice testimony was not supported by the evidence, validated the prosecutor's notion that the accomplice, Steele, was guilty based either on actions after the fact or on a failure to act theory, and constituted an expression of opinion by the trial judge. The issue was not whether Steele was guilty, but whether his version of what occurred was credible and the trial court correctly instructed the jury to carefully scrutinize his testimony.

**Am Jur 2d, Trial §§ 1225.**

STATE v. ROWSEY

[343 N.C. 603 (1996)]

**Necessity of, and prejudicial effect of omitting, cautionary instruction to jury as to accomplice's testimony against defendant in federal criminal trial. 17 ALR Fed. 249.**

5. **Criminal Law § 1355 (NCI4th)— capital sentencing—mitigating circumstances—no significant history of prior criminal activity—submitted over defendant's objection**

The trial court did not err in a capital murder prosecution by submitting over defendant's objection the statutory mitigating circumstance that defendant had no significant history of prior criminal activity where defendant was convicted of two counts of larceny seven months before the shooting, fifteen counts of injury to property less than two years before the shooting, an alcoholic beverage violation less than two years before the shooting, illegally possessed marijuana on the day of the shooting, illegally concealed the murder weapon on his person on a number of occasions prior to the shooting, and participated in a breaking and entering of a church. Defendant's convictions consisted primarily of property crimes, he did not have any felony convictions, and there was no evidence of any prior violent criminal activity. A rational juror could conclude that defendant did not have a significant history of prior criminal activity at the time of the murder. N.C.G.S. § 15A-2000(f)(1).

**Am Jur 2d, Trial §§ 841, 1760.**

6. **Criminal Law § 1321 (NCI4th)— capital sentencing—Issue Four—unanimity**

There was no plain error in a capital sentencing proceeding in instructing the jury that it must be unanimous in its answer to Issue Four on the Issues and Recommendation as to Punishment form. The jury sent a written inquiry to the trial court asking whether Issue Four had to be unanimous either way and the trial court informed the jury that the verdict had to be unanimous for yes and unanimous for no. This Court has recently considered and rejected defendant's argument in *State v. McLaughlin*, 341 N.C. 426.

**Am Jur 2d, Trial §§ 1077 et seq.**

**Requirement of jury unanimity as to mode of committing crime under statute setting forth the various modes by which offense may be committed. 75 ALR4th 91.**

STATE v. ROWSEY

[343 N.C. 603 (1996)]

Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed. 51 L. Ed. 2d 886.

7. Criminal Law § 1300 (NCI4th)— capital sentencing— alleged errors in guilt-innocence phase—not prejudicial in sentencing phase

There was no prejudice in a capital sentencing proceeding where the court had denied defendant's pretrial motion *in limine* asking the court to prevent an accomplice, Steele, from testifying; had failed to intervene *ex mero motu* during the prosecutor's guilt-innocence phase closing arguments; and had instructed the jury that there was evidence that Steele was an accomplice and that the testimony of an accomplice should be examined with care and caution.

Am Jur 2d, Evidence § 1485; Homicide §§ 345, 429; Trial §§ 504, 821, 822, 1362, 1363, 1401.

Necessity of, and prejudicial effect of omitting, cautionary instruction to jury as to accomplice's testimony against defendant in federal criminal trial. 17 ALR Fed. 249.

8. Criminal Law § 912 (NCI4th)— capital murder—jury poll— emotional juror

A defendant in a capital murder trial was not entitled to a new trial where the trial court polled each juror after the sentencing recommendation was read, one juror first did not respond, then became emotional, then responded "Yes" to questions as to whether she had an answer and whether that answer was yes. Although defendant contends that the juror's response was ambiguous in that the second yes may have meant that she had an answer to the court's previous question, the trial court properly conducted the individual jury poll mandated by N.C.G.S. § 15A-2000(b), properly presented this juror with the question of whether she concurred with the verdict, there is no evidence that her response was coerced by any of the parties present, and the parties at the time did not indicate that the juror's answer was ambiguous despite being asked by the court whether they had anything else regarding the juror poll. The juror's emotional response and initial hesitation to answer is not sufficient to show that she did not assent to the verdict. This was the sixth juror to

be polled; a reasonable juror in this situation would have understood that the trial court's final question was referring to the critical question of whether she assented to the verdict.

**Am Jur 2d, Trial §§ 1766, 1770.**

**Juror's reluctant, equivocal, or conditional assent to verdict, on polling, as ground for mistrial or new trial in criminal case. 25 ALR3d 1149.**

9. **Criminal Law § 1363 (NCI4th)— capital sentencing—definition of evidence—defendant's demeanor**

   There was no plain error in a capital sentencing hearing in the instruction that evidence "is what came from that witness stand there subject to oath and cross-examination." Although defendant contends that this instruction precluded the jury from considering defendant's demeanor in the courtroom, defendant did not request a nonstatutory mitigating circumstance that his demeanor in the courtroom demonstrated remorse; the trial court submitted the catchall mitigating circumstance, which allows the jury to find that a defendant's demeanor at trial showed regret or remorse or otherwise had mitigating value; viewed in context, the complained-of instruction did not improperly instruct the jury not to consider defendant's demeanor; the only indication in the record that defendant showed any remorse at trial is the prosecutor's statement in his sentencing proceeding closing argument that defendant shed tears while his mother was on the stand; and defendant's counsel did not argue that the jury should consider defendant's demeanor to be mitigating.

   **Am Jur 2d, Trial §§ 1081, 1124, 1125.**

10. **Evidence and Witnesses § 748 (NCI4th)— capital sentencing—evidence withdrawn after admission over objection—no prejudice**

   There was no prejudicial error in a capital sentencing proceeding where the trial court overruled defendant's objection to lay opinion testimony elicited by the prosecutor on cross-examination on whether evidence concerning defendant's childhood had anything to do with the murder, but reversed that the ruling the next day and instructed the jury to disregard the evidence. Given the nature of the testimony and the fact that at least one juror found each of the nonstatutory mitigating circumstances related to defendant's childhood home life, the trial court's

instruction was sufficient to cure any prejudice suffered by defendant.

**Am Jur 2d, Expert and Opinion Evidence §§ 53, 54, 166, 167, 170.**

**Comment Note.—Ability to see, hear, smell, or otherwise sense, as proper subject of opinion by lay witness. 10 ALR3d 258.**

**Construction and application of Rule 701 of Federal Rules of Evidence providing for opinion testimony by lay witnesses under certain circumstances. 44 ALR Fed. 919.**

11. **Evidence and Witnesses § 2783 (NCI4th)— capital sentencing—prosecutor's comment—curative instruction—no prejudice**

There was no prejudicial error in a capital sentencing proceeding where defendant's brother testified that defendant had "a big heart," the prosecutor said that he was sure the victim's mother appreciated that, and the trial court sustained defendant's objection. Sustaining an objection and issuing curative instructions cures any prejudice due to the jury's exposure to incompetent evidence, and the same rule applies when defendant contends that a question by a prosecutor was prejudicial. Here the court promptly sustained defendant's objection and defendant did not request any curative instructions.

**Am Jur 2d, Trial §§ 428, 466, 470.**

12. **Criminal Law § 1373 (NCI4th)— death sentence—not disproportionate**

A sentence of death in a first-degree murder prosecution was not disproportionate where the jury's finding of each of the aggravating circumstances was supported by the evidence; nothing in the record suggests that defendant's death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; this case is not sufficiently similar to any of those cases in which the North Carolina Supreme Court has previously found disproportionality to warrant a finding of disproportionality in this case; and this case is most analogous to cases in which the Court has held the death penalty not to be disproportionate. The most significant distinguishing features of this case are the killing

STATE v. ROWSEY

[343 N.C. 603 (1996)]

of a lone employee in the early morning hours and the especially heinous, atrocious, or cruel nature of the killing. This case rises to the level of cases in which the Court has approved the death penalty.

**Am Jur 2d, Criminal Law § 628; Trial §§ 841, 1760.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was committed for pecuniary gain, as consideration or in expectation of receiving something of monetary value, and the like—post-*Gregg* cases. 66 ALR4th 417.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed. 51 L. Ed. 2d 886.**

Justice FRYE concurring in part, dissenting in part.

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Brannon, J., on 1 October 1993 in Superior Court, Alamance County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment imposed for robbery with a dangerous weapon was allowed on 27 March 1995. Heard in the Supreme Court 13 October 1995.

*Michael F. Easley, Attorney General, by David Roy Blackwell, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant was tried capitally on an indictment charging him with the first-degree murder of Howard Rue Sikorski ("victim"). The jury returned a verdict finding defendant guilty as charged on the bases of both premeditation and deliberation and felony murder. The jury also found defendant guilty of robbery with a firearm. Following a capital sentencing proceeding, the jury recommended that defendant be sen-

tenced to death for the murder; and the trial court entered judgment accordingly. The trial court sentenced defendant to a consecutive term of forty years in prison for robbery with a dangerous weapon. For the reasons discussed herein, we conclude that the jury selection, guilt-innocence phase, and capital sentencing proceeding of defendant's trial were free from prejudicial error and that the death sentence is not disproportionate.

The State's evidence tended to show that on the evening of 23 March 1992, defendant and his half brother, Raymond Lee Steele, wrestled, played cards, and listened to the radio at Steele's house. The two men got bored, and they decided to walk to the Circle K convenience store on the corner of Chapel Hill Road and Mebane Street in Burlington, North Carolina, where the victim worked as a clerk.

Defendant and Steele left Steele's house at 12:30 a.m. on 24 March and arrived at the Circle K approximately thirty to forty minutes later. At the store defendant and Steele obtained change and played several dollars worth of video games. Defendant and Steele then went to the back of the store to examine the store's rental movie display.

Defendant asked Steele to give him some money so that he could buy a snack, and Steele gave defendant two dollars. Defendant selected one bag of M & M's and went to the checkout counter. Upon learning the price, defendant returned to the candy aisle and obtained a second bag of M & M's. Defendant then went back to the checkout counter and paid for the candy.

At this point defendant pulled a gun out of his coat pocket and pointed it at the victim. The gun clicked, but it did not fire. When the gun clicked defendant turned towards Steele and smiled. Defendant told Steele that he had scared the victim with a water gun.

Defendant then turned back towards the victim, jerked the gun up, and shot the victim in the face. As the victim fell to the floor and turned his back to defendant, defendant leaned over the counter and shot the victim again. Defendant then ran around the counter and fired at least two more shots. As the victim lay facedown on the floor, defendant stood over him and kicked him three or four times in the back of the head.

After seeing defendant kick the victim in the back of the head, Steele ran out one of the store's two doors, around the building, and into the parking lot. Moments later, defendant ran out the other door

with something underneath his arm and the gun in his hand. Together, defendant and Steele ran and walked back to Steele's house. As they walked home, Steele asked defendant why he shot the victim. Defendant told Steele that he was just playing around, that he saw the victim reaching underneath the counter as if reaching for a gun, and that he thought the victim was going to shoot him so he shot the victim instead.

At Steele's house defendant counted $54.00 in cash and told Steele that he had taken the money from the Circle K cash register. Upon Steele's inquiry, defendant told Steele that he took the money in order to make it look like a robbery and in order to make it worth the while. Steele also saw four or five adult entertainment magazines, including *Penthouse*, *Playboy*, and *Oui*, in defendant's possession. Defendant offered Steele half the money, but Steele declined. Defendant then offered and Steele accepted a two-dollar bill which had been taken from the Circle K cash register.

Steele asked defendant if the victim was alive, and defendant told Steele that he did not know whether the victim remained alive or not. Defendant told Steele that he kicked the victim in an effort to ensure the victim's death and that the victim was alive and gasping for breath when he left the scene.

Defendant examined the murder weapon, a .25-caliber automatic handgun which defendant had taken from a locked trunk in the home of his girlfriend's mother, and indicated that it was dirty. Defendant told Steele that he did not want to return the gun in this condition, and Steele cleaned the gun for defendant. Defendant explained that the gun was loaded when he took the gun, so Steele provided defendant with .25-caliber bullets so that defendant could return the gun loaded.

The victim's body was discovered, lying behind the checkout counter, at approximately 2:00 a.m. on 24 March. There was a large quantity of blood on the floor running from the victim's head to his right foot. Dr. Karen Elizabeth Chancellor performed the autopsy on the victim's body; and her examination revealed six gunshot wounds: one to the face, one to the back of the neck, one to the right side of the head, and three to the back. Additionally, the victim suffered a number of blunt-force injuries to the head and neck area. One of the gunshot wounds pierced the victim's left lung and resulted in massive bleeding; this wound alone would have caused the victim's death.

Mildred Holder, who helped manage the Chapel Hill Road and Mebane Street Circle K, arrived at the store early that morning and identified the victim's body. Ms. Holder subsequently closed out the cash register and determined that $57.54 was missing. The Circle K's manager, Brenda Bowes, noticed that several magazines were missing from the adult entertainment magazine rack. Ms. Holder informed the police that the Circle K store had a two-dollar bill "bait money" policy pursuant to which the store kept a two-dollar bill in the cash register and a record of the bill's serial number. Ms. Holder told the police that the two-dollar bill was missing and provided the police with the bill's serial number.

At approximately 2:30 p.m. on 24 March, Steele and his girlfriend made a purchase at a Burlington store with the missing two-dollar bill. Steele was arrested shortly thereafter. Steele initially made several false statements in which he denied any involvement in the Circle K murder, but he subsequently admitted that he had been present at the Circle K when defendant shot and killed the victim. Defendant was arrested later that evening.

Steele was permitted to plead guilty to second-degree murder and robbery with a dangerous weapon in exchange for his truthful testimony at trial. At trial Steele acknowledged that he was testifying pursuant to a plea bargain and that he was in fact guilty of the crimes to which he pled based upon a theory of acting in concert. Steele also indicated that he did not plan or participate in the robbery or the murder and that he was shocked when the shooting began.

During defendant's cross-examination of Steele, defendant questioned Steele with respect to a four-page letter which Steele wrote to defendant while they were in prison and which concluded with the phrase, "even though you didn't do it." Steele acknowledged writing the letter, but denied writing "even though you didn't do it."

Two of defendant's witnesses claimed that they overheard Steele admit that he killed the victim. Robert Eastwood, an inmate at the Alamance County jail, testified that he overheard a conversation between Steele and defendant and that during that conversation Steele acknowledged that he killed the victim. Another inmate, Gerald Wayne Flynn, II, testified that he overheard a jailhouse conversation between Steele and defendant in which Steele stated that he would take the blame for the victim's murder because he did not want defendant to take the blame for something defendant did not do.

STATE v. ROWSEY

[343 N.C. 603 (1996)]

At sentencing the State initially declined to present evidence. Defendant presented evidence that he came from a broken home, that he was neglected by his mother, that he was exposed to the promiscuous sexual activity of his mother and sister, that he was illegitimate and had little contact with his biological father, and that his mother had a drug- and alcohol- abuse problem.

The State's rebuttal evidence at sentencing showed that defendant was responsible for breaking into a church and stealing a number of items valued at approximately $900.00 just weeks prior to the Circle K murder. The State's evidence further showed that defendant had been convicted of fifteen counts of injury to personal property in 1990, one count of possession of a malt beverage by a minor in 1990, and two counts of misdemeanor larceny in 1991.

## JURY SELECTION

[1] Defendant contends that the trial court erred in granting the State's motion to excuse for cause prospective juror Gene Kizziah. We disagree.

In the instant case the record shows that prospective juror Kizziah was excused after extensive questioning by the State, defendant, and the trial court. In response to the State's questions, Mr. Kizziah stated that he opposed the death penalty in most cases and that his views would "impair" his ability to impose a death sentence in a real case. After Mr. Kizziah indicated that his views would impair him "a great deal," the State moved to excuse him for cause.

The trial court then permitted defendant to question Mr. Kizziah in order to clarify his answers, and Mr. Kizziah gave equivocal and conflicting responses. Mr. Kizziah stated that he did not know if he could follow the trial court's instructions in evaluating the evidence, that he did not know if he could follow the trial court's instructions in determining whether the aggravating circumstances were sufficiently substantial to call for the imposition of the death penalty, and that there was a strong possibility that his personal beliefs about the death penalty would so substantially impair his ability to follow the trial court's instructions that he would not be able to do so. Mr. Kizziah also gave responses indicating that he could fairly, honestly, and impartially consider whether the aggravating circumstances outweighed the mitigating circumstances; that there were some cases in which he would not be opposed to the death penalty; and that he could render a fair and impartial verdict based on the evidence.

STATE v. ROWSEY

[343 N.C. 603 (1996)]

In response to additional questions posed by the State, Mr. Kizziah continued to give equivocal and conflicting responses. He stated that he did not believe that his views would make him automatically vote against capital punishment and that he really did not know if his views would substantially impair his ability to follow the trial court's instructions with respect to the death penalty. In response to the trial court's questions, Mr. Kizziah indicated that he would try to find ways to vote for life imprisonment over death and that he would try to be honest about the way he voted. The trial court then granted the State's motion to excuse prospective juror Kizziah for cause.

The standard for determining when a potential juror may be excluded for cause because of his views on capital punishment is "whether those views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)); *accord State v. Davis*, 325 N.C. 607, 621-22, 386 S.E.2d 418, 425 (1989), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990). Prospective jurors with reservations about capital punishment must be able to "state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law." *Lockhart v. McCree*, 476 U.S. 162, 176, 90 L. Ed. 2d 137, 149 (1986); *State v. Brogden*, 334 N.C. 39, 43, 430 S.E.2d 905, 907-08 (1993). However, a prospective juror's bias or inability to follow the law does not have to be proven with unmistakable clarity. *State v. Locklear*, 331 N.C. [239,] 248, 415 S.E.2d [726,] 731-32 [1992]; *State v. Davis*, 325 N.C. at 624, 386 S.E.2d at 426. "[T]here will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law . . . . [T]his is why deference must be paid to the trial judge who sees and hears the juror." *Wainwright v. Witt*, 469 U.S. at 426, 83 L. Ed. 2d at 852-53.

*State v. Conaway*, 339 N.C. 487, 511-12, 453 S.E.2d 824, 839-40, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 153 (1995).

In this instance the record shows that prospective juror Kizziah gave equivocal and conflicting answers about whether he would be able to set aside his own beliefs with respect to the death penalty and follow the law. The equivocal and conflicting answers given by

prospective juror Kizziah left the impression that he would be unable to fairly and impartially follow the law. *Wainwright v. Witt,* 469 U.S. at 426, 83 L. Ed. 2d at 852. Accordingly, the trial court did not err in granting the prosecutor's challenge of prospective juror Kizziah for cause. This assignment of error is overruled.

## GUILT-INNOCENCE PHASE

[2]  Defendant made a pretrial motion *in limine* asking that the State be prohibited from offering the testimony of Raymond Lee Steele. Defendant's motion stated that there was no factual basis for Steele's guilty plea to second-degree murder and robbery with a dangerous weapon and that the prosecution was prohibited from using perjured testimony. The trial court denied defendant's motion and permitted Steele to testify.

In this assignment of error, defendant contends that the State knowingly permitted Steele to give false testimony with respect to Steele's plea bargain to second-degree murder and robbery with a dangerous weapon. Defendant contends that permitting Steele to testify that he did not plan or participate in the killing or the robbery was inconsistent with his guilty plea and that this amounted to presenting false testimony to the jury. We disagree.

On direct examination Steele testified that he had been charged with first-degree murder and robbery with a dangerous weapon with respect to the robbery-murder at issue in this case. Steele testified that he had entered a guilty plea to second-degree murder and robbery with a dangerous weapon and that he was, in fact, guilty of both those charges.

Steele, in the plea transcript, which was introduced into evidence and read to the jury by Steele, stated:

It is understood that I, by pleading guilty, am not admitting that I actually killed the victim or took money from the Circle K cash register. I acknowledge that there is evidence from which the jury could find me guilty of murder and robbery on the theory of acting in concert.

A letter from Steele and his counsel to the district attorney was attached to the plea bargain and was also introduced into evidence and read to the jury. In the letter Steele and his counsel stated that Steele would plead guilty to second-degree murder, that the district

attorney had indicated that he would not accept an *Alford* plea[1], and that the plea transcript would affirmatively state that Steele denied that he shot the clerk or that he took any money from the register but that Steele understood that there was evidence from which a jury could find him guilty of murder and robbery with a dangerous weapon on the theory of acting in concert.

Steele testified that he did not rob the Circle K, that he did not know that any money had been taken until he and defendant returned to his house, and that he did not plan or participate in the murder. Defendant contends that this testimony was completely inconsistent with guilt of second-degree murder and robbery with a dangerous weapon, even under a theory of acting in concert. Defendant argues that the State's use of Steele's clearly exculpatory testimony amounted to the use of false testimony. We disagree.

> "[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269, 3 L. Ed. 2d 1217, 1221 (1959); *accord State v. McDowell*, 310 N.C. 61, 310 S.E.2d 301 (1984). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue*, 360 U.S. at 269, 3 L. Ed. 2d at 1221. Further, with regard to the knowing use of perjured testimony, the Supreme Court has established a " 'standard of materiality' under which the knowing use of per-jured testimony requires a conviction to be set aside 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *State v. Sanders*, 327 N.C. 319, 336, 395 S.E.2d 412, 424 (1990) (quoting *United States v. Agurs*, 427 U.S. 97, 103, 49 L. Ed. 2d 342, 349-50 (1976)), *cert. denied*, 498 U.S. 1051, 112 L. Ed. 2d 782 (1991). Thus, "[w]hen a defendant shows that 'testimony was in fact false, material, and knowingly and intentionally used by the State to obtain his con-viction,' he is entitled to a new trial." *Id.* at 336, 395 S.E.2d at 423 (quoting *State v. Robbins*, 319 N.C. 465, 514, 356 S.E.2d 279, 308 (1987), *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987)).

*State v. Williams*, 341 N.C. 1, 16, 459 S.E.2d 208, 217 (1995).

---

1. In *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162 (1970), the Court held that a defendant may enter a guilty plea containing a protestation of innocence when the defendant intelligently concludes that a guilty plea is in his best interest and the record contains strong evidence of actual guilt. *Id.* at 37-39, 27 L. Ed. 2d at 171-72.

STATE v. ROWSEY

[343 N.C. 603 (1996)]

Defendant has failed to show that any of Steele's testimony was false or that the State knowingly and intentionally used false testimony to obtain defendant's conviction. Steele's testimony at trial was consistent with his plea transcript and with the letter to the district attorney. After initially denying any involvement in the crime, Steele consistently stated that defendant shot the victim and that he did not plan or participate in the murder and robbery.

Defendant argues that Steele's testimony was inconsistent with guilt and inconsistent with the fact that Steele acknowledged that the district attorney would not accept an *Alford* plea. Steele, in his plea transcript, stated that he was in fact guilty. Thus, he did not enter an *Alford* plea.

Any inconsistency in Steele's testimony with guilt or with his plea agreement is relevant to Steele's credibility as a witness. This Court has stated that the "credibility of witnesses is a matter for the jury rather than the court." *State v. Keller*, 297 N.C. 674, 679, 256 S.E.2d 710, 714 (1979); *accord State v. Peterson*, 337 N.C. 384, 396, 446 S.E.2d 43, 51 (1994). Defendant had ample opportunity to cross-examine Steele with respect to any inconsistencies between his pretrial statements, his guilty plea, and his testimony at trial. We conclude that the trial court properly denied defendant's motion to prohibit Steele from testifying. Defendant's assignment of error is overruled.

[3] In a related assignment of error, defendant contends that the trial court erred by failing to prevent the prosecutor from arguing a legally spurious theory of Steele's guilt during the guilt-innocence phase closing arguments. Defendant did not make an objection during closing arguments, so "he must demonstrate that the prosecutor's closing arguments amounted to gross impropriety." *State v. Rouse*, 339 N.C. 59, 91, 451 S.E.2d 543, 560 (1994), *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 60 (1995).

During his closing argument the prosecutor stated that Steele was defendant's accomplice. The prosecutor noted that Steele saw defendant shoot the victim, that Steele did nothing to stop defendant, that Steele did not call 911 even though there was a phone booth near the Circle K, and that Steele cleaned the murder weapon and lied to help cover up the crime. Defendant contends that this argument had no support in North Carolina law.

Defendant correctly states that the mere presence of a person at the scene of a crime at the time of its commission does not make him

an accomplice. *State v. Birchfield*, 235 N.C. 410, 413, 70 S.E.2d 5, 7 (1952). However, when viewed in context, the prosecutor's argument was not that Steele's mere presence at the scene of the crime showed that he was guilty of the crimes to which he pled. Rather, this portion of the prosecutor's argument explained that the prosecutor entered into a plea bargain with Steele because defendant was more culpable than Steele and Steele's testimony was necessary to prove beyond a reasonable doubt that defendant shot the victim. The prosecutor's argument was supported by the record; and, after careful review, we conclude that it was not improper. This assignment of error is without merit.

[4]    In another related assignment of error, defendant contends that the trial court compounded the alleged error in permitting Steele to testify by giving the following instruction, without objection, on accomplice testimony:

> There is evidence which tends to show that the witness, Raymond Lee Steele, was an accomplice in the commission of the crime or crimes charged in this case. An accomplice is a person who joins with another in the commission of a crime. The accomplice may actually take part in acts necessary to accomplish the crime or he may knowingly help or encourage another in the crime either before or during its commission. An accomplice is considered by the law to have an interest in the outcome of the case. You should examine every part of the testimony of this witness with the greatest care and caution.

Defendant argues that the instruction was not supported by the evidence; that the instruction validated the prosecutor's notion that Steele was guilty based either on actions after the fact or on a failure to act theory, neither of which is sufficient; and that the instruction constituted an expression of opinion by the trial judge. We disagree.

The evidence was in conflict as to which brother took the .25 caliber weapon to the Circle K and whether Steele provided ammunition for the weapon prior to the killing. Further, the evidence tended to show that Steele assisted in hiding the crime by cleaning and reloading the weapon and by cleaning defendant's shoes. Steele pled guilty to second-degree murder and robbery with a dangerous weapon; and Steele testified that he was, in fact, guilty of the crimes to which he pled guilty under the principle of acting in concert. "An accomplice testifying for the prosecution is generally regarded as an interested witness, and a defendant, upon timely request, is entitled to an

STATE v. ROWSEY

[343 N.C. 603 (1996)]

instruction that the testimony of an accomplice should be carefully scrutinized." *State v. Harris*, 290 N.C. 681, 699, 228 S.E.2d 437, 447 (1976). Here the issue was not whether Steele was guilty, but whether his version of what occurred was credible. For this reason we conclude that the trial court correctly instructed the jury to carefully scrutinize his testimony. This assignment of error is overruled.

## SENTENCING PROCEEDING

**[5]** Defendant contends that the trial court erred by submitting, over defendant's objection, the statutory mitigating circumstance that defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1). We disagree.

"[T]his Court has held that where evidence is presented in a capital sentencing proceeding that may support a statutory mitigating circumstance, N.C.G.S. § 15A-2000(b) directs that the circumstance must be submitted for the jury's consideration absent defendant's request or even over his objection." *State v. Ingle*, 336 N.C. 617, 642, 445 S.E.2d 880, 893 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 222 (1995).

Before submitting the (f)(1) circumstance, the trial court must initially "determine whether a rational jury could conclude that defendant had no *significant* history of prior criminal activity." *State v. Wilson*, 322 N.C. 117, 143, 367 S.E.2d 589, 604 (1988). "A significant history for purposes of this circumstance is one likely to influence the jury's sentence recommendation." *State v. Frye*, 341 N.C. 470, 503, 461 S.E.2d 664, 681 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 526 (1996); *accord State v. Sexton*, 336 N.C. 321, 375, 444 S.E.2d 879, 910, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 429 (1994). "[I]t is not merely the number of prior criminal activities, but the nature and age of such acts that the trial court considers in determining whether by such evidence a rational juror could conclude that this mitigating circumstance exists." *State v. Artis*, 325 N.C. 278, 314, 384 S.E.2d 470, 490 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990).

A review of the record reveals that defendant was convicted of two counts of larceny seven months before the shooting, that defendant was convicted of fifteen counts of injury to property less than two years before the shooting, and that defendant was convicted of an alcoholic beverage violation less than two years before the shooting. Additionally, the evidence showed that defendant illegally possessed

marijuana on the day of the shooting, that defendant illegally concealed the murder weapon on his person on a number of occasions prior to the shooting, and that defendant participated in a breaking and entering of a church. Other evidence, which the State did not present to the jury, showed that defendant had been charged with five counts of felony breaking and entering and felony larceny offenses at the time of trial.

In *State v. Lloyd*, 321 N.C. 301, 364 S.E.2d 316, *sentence vacated on other grounds*, 488 U.S. 807, 102 L. Ed. 2d 18 (1988), this Court held that the trial court correctly submitted the (f)(1) mitigating circumstance even though there was evidence defendant had been convicted of two felonies and seven alcohol-related misdemeanors. *Id.* at 313, 364 S.E.2d at 324. In *State v. Buckner*, 342 N.C. 198, 464 S.E.2d 414 (1995), this Court determined that the trial court did not err by submitting the (f)(1) mitigating circumstance over the defendant's objection where the defendant's criminal record consisted of seven breaking and entering convictions, a common-law robbery conviction, and a drug-trafficking conviction. *Id.* at 234, 464 S.E.2d at 434-35.

In this case defendant's convictions consisted primarily of property crimes, and defendant did not have any felony convictions. Unlike in *Buckner*, where the defendant had been convicted of common-law robbery, there was no evidence of any prior violent criminal activity on the part of defendant. Based on the evidence presented in this case, a rational juror could conclude that defendant did not have a significant history of prior criminal activity at the time of the murder. *See also State v. Walker*, 343 N.C. 216, 469 S.E.2d 919 (1996) (holding that absent extraordinary facts, the erroneous submission of a mitigating circumstance is harmless). Defendant's assignment of error is overruled.

[6]    In his next assignment of error, defendant contends that the trial court committed plain error by instructing the jury that it must be unanimous in its answer to Issue Four on the "Issues and Recommendation as to Punishment" form. Defendant contends that the trial court's instruction that the jury must be unanimous to answer Issue Four "no" was contrary to North Carolina law and violated his federal constitutional rights. We disagree.

Issue Four on the Issues and Recommendation as to Punishment form given to the jury in this case reads as follows:

**STATE v. ROWSEY**

[343 N.C. 603 (1996)]

Do you unanimously find beyond a reasonable doubt that the aggravating circumstance or circumstances you found is, or are, sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstance or circumstances found by one or more of you?

On the second day of deliberations following the sentencing proceeding jury charge, the jury sent a written inquiry to the trial court with respect to Issue Four. The note read: "We are asking about issue four, does this have to be unanimous either way, yes, no." The trial court informed the jury that the jury verdict had to be unanimous for "yes" and that it had to be unanimous for "no." Defendant's trial counsel did not object to this instruction.

Defendant contends that the trial court's response to the jury's question constituted plain error. We disagree and hold that the trial court's response correctly stated the law.

This Court has recently considered and rejected defendant's argument. *State v. McLaughlin*, 341 N.C. 426, 455, 462 S.E.2d 1, 17 (1995), *cert. denied,* —— U.S. ——, 133 L. Ed. 2d 879 (1996); *see also State v. McCarver*, 341 N.C. 364, 462 S.E.2d 25 (1995), *cert. denied,* —— U.S. ——, 134 L. Ed. 2d 482 (1996). In *McCarver* the defendant contended that the trial court erred by refusing to instruct the jury that it did not need to be unanimous in order to answer "no" to Issue Three on the Issues and Recommendation as to Punishment form. 341 N.C. at 388, 462 S.E.2d at 38-39. We rejected the defendant's argument and concluded

that any issue which is *outcome determinative* as to the sentence a defendant in a capital trial will receive—whether death or life imprisonment—must be answered unanimously by the jury. That is, the jury should answer Issues One, Three, and Four on the standard form used in capital cases either unanimously "yes" or unanimously "no."

*Id.* at 390, 462 S.E.2d at 39.

In *McLaughlin* this Court addressed the question of whether the trial court correctly instructed the jury that it must be unanimous before it could answer Issue Four "yes" or "no." 341 N.C. at 455, 462 S.E.2d at 17. We stated that "[a] jury must be unanimous in deciding any sentence determinative issue, and Issue Four is a sentence determinative issue." *Id.* This Court concluded that the trial court properly

instructed the jury that it must be unanimous before it could answer Issue Four "yes" or "no." *Id.*

Similarly, in the present case the trial court properly instructed the jury that it must be unanimous to answer Issue Four "yes" or "no." This assignment of error is overruled.

[7] Defendant next contends that the trial court erred in denying defendant's pretrial motion *in limine* to prevent codefendant Raymond Lee Steele from testifying, that the prosecutor improperly argued a "spurious theory of Steele's guilt" to the jury during the guilt-innocence phase closing arguments, and that the trial court's instruction on accomplice testimony was plain error. Defendant argues that even if this Court finds these errors harmless with respect to the guilt-innocence phase, the error prejudiced defendant in the sentencing proceeding. For the reasons we stated in addressing these issues earlier in this opinion, the trial court did not err in denying defendant's motion *in limine* asking the court to prevent Steele from testifying; the trial court did not err by failing to intervene *ex mero motu* during the prosecutor's guilt-innocence phase closing arguments; and the trial court did not err by instructing the jury that there was evidence that Steele was an accomplice and that the testimony of an accomplice should be examined with care and caution.

[8] In his next assignment of error, defendant contends that a juror's ambiguous response with respect to whether she assented to the verdict entitles him to a new trial. We disagree.

After the jury foreman read the jury's sentencing recommendation, the trial court polled each juror individually with respect to his or her assent to the death verdict. The following occurred when the trial court addressed juror Leath:

THE COURT: Ms. Leath, Ms. Leath, your foreman has announced that the verdict of the jury is is [sic] that the defendant, Mr. Rowsey, be sentenced to death, was that your verdict and do you still agree to that as being your verdict in this case?

MS. LEATH: (No response).

THE COURT: Ms. Leath, I'll repeat the question. Ms. Leath, your foreman has announced that the verdict of the jury is is [sic] that the defendant, Mr. Rowsey, be sentenced to death, was that your verdict and do you still agree to that as being your verdict in this case?

STATE v. ROWSEY

[343 N.C. 603 (1996)]

Ms. LEATH: (No response, becomes emotional).

THE COURT: Ms. Leath, do you have an answer to the question.

Ms. LEATH: Yes (nods affirmatively).

THE COURT: And was your answer yes, ma'am?

Ms. LEATH: Yes.

Defendant contends that juror Leath's response was ambiguous in that the second "yes" answer may have meant that she had an answer to the trial court's previous question rather than indicating that she agreed with the death verdict. Defendant argues that the record does not reveal what juror Leath meant by the second "yes" and that this uncertainty renders the jury poll fatally defective.

N.C.G.S. § 15A-2000(b) states that "[u]pon delivery of the sentence recommendation by the foreman of the jury, the jury shall be individually polled to establish whether each juror concurs and agrees to the sentence recommendation returned." N.C.G.S. § 15A-2000(b). The purpose of polling the jury is

to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned, and thus to enable the court and the parties to ascertain *with certainty* that a unanimous verdict has been in fact reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented.

*Davis v. State,* 273 N.C. 533, 541, 160 S.E.2d 697, 703 (1968). "A jury verdict is not defective if it appears that the juror eventually freely assented to the verdict." *State v. Asbury,* 291 N.C. 164, 171, 229 S.E.2d 175, 178 (1976).

In this instance the trial court properly conducted the individual jury poll mandated by N.C.G.S. § 15A-2000(b). The trial court asked each juror whether the verdict read by the jury foreman was the juror's verdict and whether the juror still agreed with that verdict, and each juror responded "yes" to this question. While juror Leath twice failed to respond to the court's inquiry, she eventually indicated that she had an answer and that the answer was "yes." The trial court properly presented juror Leath with the question of whether she concurred with the verdict, and there is no evidence that her response was coerced by any of the parties present.

Before dismissing the jury, the trial court asked counsel for both the State and defendant whether they had anything else with respect to the jury poll, and defendant did not indicate that juror Leath's answer was ambiguous at that time. After the jury was dismissed, defendant's counsel argued that juror Leath's body language and her crying indicated that she was not in agreement with the verdict. Juror Leath's emotional response and initial hesitation to answer is not sufficient to show that she did not assent to the verdict. *See State v. Spruill*, 320 N.C. 688, 697-98, 360 S.E.2d 667, 672 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 934 (1988).

Juror Leath was the sixth juror polled by the trial court, and a reasonable juror in this situation would have understood that the trial court's final question was referring to the critical question of whether she assented to the jury verdict. We are confident that juror Leath did not understand the question otherwise. Defendant's assignment of error is overruled.

[9] Defendant next contends that the trial court committed plain error by instructing the jury in a manner which precluded its considering defendant's demeanor in the courtroom as mitigating evidence. Toward the end of the sentencing proceeding jury charge, the trial court instructed the jury as follows: "Now, members of the jury, you've heard the evidence, the evidence, of course, is what came forth from that witness stand there subject to oath and cross-examination." Defendant contends that this instruction violated the Eighth Amendment to the United States Constitution by precluding the capital sentencing jury from considering defendant's demeanor in the courtroom. We disagree.

Defendant did not request a nonstatutory mitigating circumstance that defendant's demeanor in the courtroom demonstrated remorse for his killing. However, the trial court submitted the N.C.G.S. § 15A-2000(f)(9) mitigating circumstance, permitting the jury to consider "[a]ny other circumstance or circumstances arising from the evidence which one or more of you deems to have mitigating value." " '[E]vidence is not only what [jurors] hear on the stand but [is also] what they witness in the courtroom.' " *State v. McNeil*, 327 N.C. 388, 396, 395 S.E.2d 106, 111 (1990) (quoting *State v. Brown*, 320 N.C. 179, 199, 358 S.E.2d 1, 15, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987)) (alteration in original), *cert. denied*, 499 U.S. 942, 113 L. Ed. 2d 459 (1991). When the (f)(9) circumstance is submitted, the capital sentencing jury may find that a defendant's demeanor at trial

showed regret or remorse or otherwise had mitigating value. *See id.* at 396, 395 S.E.2d at 111.

Defendant contends that the trial court's instruction that the "evidence . . . is what came forth from that witness stand" precluded the jury from considering evidence that defendant was crying while his mother was on the stand. " '[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' " *Id.* at 392, 395 S.E.2d at 109 (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47, 38 L. Ed. 2d 368, 373 (1973)). Viewed in context, it is apparent that the trial court's instruction did not preclude the jury from considering defendant's demeanor at trial. Rather, this portion of the instruction charged the jurors to rely upon their own recollection of the evidence if their recollection differed from that of counsel for either party. The trial court instructed as follows:

> Now, members of the jury, you've heard the evidence, the evidence, of course, is what came forth from that witness stand there subject to oath and cross-examination. And you have heard the arguments of the advocates for the State and for the defendant. The Court has not summarized all of the evidence, but it is your duty to remember all of the evidence whether it had been called to your attention or not, and if your recollection of the evidence differs from that of the Court or the District Attorneys or the defense lawyers, or the defendant, you are to rely solely upon your own recollection of the evidence in your deliberations.

Viewed in context, the complained-of instruction did not improperly instruct the jury not to consider defendant's demeanor.

Even if we assume *arguendo* that the trial court's instruction erroneously precluded the jury from considering defendant's demeanor in the courtroom, defendant did not object to the instruction. Therefore, defendant is barred by Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure from assigning the trial court's instruction as error, *State v. Collins*, 334 N.C. 54, 61, 431 S.E.2d 188, 193 (1993); and we review defendant's assignment of error under the "plain error" rule. "[T]he term 'plain error' does not simply mean obvious or apparent error." *Id.* at 62, 431 S.E.2d at 193; *accord State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). "In order to rise to the level of plain error, the error in the trial court's instructions must be so fundamental that (i) absent the error, the jury would have

**STATE v. ROWSEY**

[343 N.C. 603 (1996)]

reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected." *State v. White,* 340 N.C. 264, 299, 457 S.E.2d 841, 862, *cert. denied,* —— U.S. ——, 133 L. Ed. 2d 436 (1995); *accord Collins,* 334 N.C. at 62, 431 S.E.2d at 193.

Under the facts of this case, the instruction did not rise to the level of "plain error." The only indication in the record that defendant showed any remorse at trial is the prosecutor's statement, in his sentencing proceeding closing argument, that defendant shed tears while his mother was on the stand. Defendant's counsel did not submit defendant's demeanor at trial as a nonstatutory mitigating circumstance, and defendant's counsel did not argue that the jury should consider defendant's demeanor to be mitigating. In fact, in response to the prosecutor's argument that defendant had shown no remorse during the trial, defendant's counsel argued that

> the way that [defendant] reacts to certain things is not evidence in this case, it's not something that you should read in and let the prosecution say to you that he doesn't have remorse because he has tried to sit there and not show his emotions only to the extent that he's been able to. He hasn't always been able to do that during this trial. I ask you to remember that.

The trial court instructed the jury to consider all of the arguments, contentions, and positions of counsel in addition to the evidence. We cannot say that, had the trial court not given the instruction that evidence is what comes forth from the witness stand, the jury probably would have reached a different verdict in the sentencing proceeding. This assignment of error is overruled.

[10] In his next assignment of error, defendant contends that the trial court erred in overruling defendant's objection to lay opinion testimony elicited by the prosecutor on cross-examination. Defendant also contends that the trial court erred by failing to prevent similar lay opinion testimony *ex mero motu.*

During the sentencing proceeding defense witness Rhonda Flack, defendant's sister, testified that her stepfather hit defendant when defendant was three or four years old, causing defendant to bleed from the mouth. On cross-examination the prosecutor asked Ms. Flack the following question: "Well, does Junior hitting [defendant] seventeen years before [the victim] was murdered have anything to do with this?" The trial court overruled defendant's objection; and Ms. Flack responded, "I don't think so, no." Shortly thereafter the

prosecutor questioned Ms. Flack with respect to her testimony that defendant was exposed to sexual activity in his mother's home when he was a child. The prosecutor asked Ms. Flack what this had to do with defendant murdering the victim; and Ms. Flack responded, "I have no idea." Defendant did not object to this second question and answer, and defendant's assignment of error with respect to this question and answer is not properly preserved for review.

On the day following Ms. Flack's testimony, the trial court reminded the jury that, on the previous day, a witness had been "asked something along the lines of what did some thing have to do with this case." The trial court then charged the jury that the objection then made by defendant was sustained and instructed the jury that "it is the jury and not a witness who is to determine" the significance, importance, and value of the evidence. Defendant contends that Ms. Flack's opinion on the relevance of the evidence was neither relevant nor admissible and that the trial court's instruction came too late to undo any prejudice. The State contends that the trial court cured any error by withdrawing the evidence and instructing the jury to disregard it.

"When the trial court withdraws incompetent evidence and instructs the jury not to consider it, any prejudice is ordinarily cured." *State v. Black*, 328 N.C. 191, 200, 400 S.E.2d 398, 404 (1991). " 'In appraising the effect of incompetent evidence once admitted and afterwards withdrawn, the Court will look to the nature of the evidence and its probable influence upon the minds of the jury in reaching a verdict.' " *State v. Hunt*, 287 N.C. 360, 374, 215 S.E.2d 40, 49 (1975) (quoting *State v. Strickland*, 229 N.C. 201, 207, 49 S.E.2d 469, 473 (1948)). "Whether instructions can cure the prejudicial effect of such statements must depend in large measure upon the nature of the evidence and the particular circumstances of the individual case." *Id.* at 375, 215 S.E.2d at 49.

In this instance Ms. Flack was permitted to testify that she did not think certain mitigating evidence had anything to do with this case. The next day the trial court properly reversed its ruling and told the jurors that it is for the jury, and not a witness, to determine the significance of evidence. Given the nature of Ms. Flack's testimony and the fact that at least one juror found each of the nonstatutory mitigating circumstances related to defendant's childhood home life, the trial court's instruction was sufficient to cure any prejudice suffered by defendant. This assignment of error is overruled.

**[11]** In a related assignment of error, defendant contends that the prosecutor engaged in unfair and inflammatory cross-examination of defendant's brother, Pete Flack. In response to a question, Mr. Flack stated that defendant had "a big heart." The prosecutor then stated: "I'm sure [the victim's] mother appreciates that." Defendant objected to this comment, and the trial court promptly sustained this objection. Defendant contends that, by alluding to the pain of the victim's mother, the prosecutor was able to blunt the impact of the mitigating evidence; that the prosecutor's tactics interfered with a proper balancing of the aggravating and mitigating circumstances; and that the prosecutor's tactics were fundamentally unfair.

We conclude that the trial court's prompt action of sustaining defendant's objection was sufficient to cure any prejudice. *See State v. Locke*, 333 N.C. 118, 124, 423 S.E.2d 467, 470 (1992). This Court has held that when a trial court sustains an objection and issues curative instructions, these "actions cure any prejudice due to a jury's exposure to incompetent evidence from a witness." *Id.* The same rule applies when the defendant contends that a question posed by the prosecutor was prejudicial. *Id.* In this instance the trial court promptly sustained defendant's objection to the prosecutor's comment, and defendant did not request any curative instructions. Under these circumstances defendant has failed to show any prejudice. This assignment of error is overruled.

## ADDITIONAL ISSUES

Defendant has designated fourteen additional issues in order to preserve them in the event of later review. Ten of these issues are properly designated as preservation issues: (i) the trial court violated defendant's due process rights by failing to give an instruction on parole eligibility after the issue was broached by a juror during jury selection and by refusing defendant's motion for sentencing proceeding jury instructions on the issue; (ii) the trial court's instruction that the jury could consider all evidence in both phases of the trial during the sentencing proceeding violated defendant's constitutional rights; (iii) the trial court committed reversible constitutional error by failing to prevent the prosecutor from commenting on defendant's demeanor and appearance in his closing argument; (iv) the trial court's instructions, defining the burden of proof applicable to mitigating circumstances violated defendant's constitutional rights in that the instructions used the terms "satisfaction" and "satisfy" to define the burden of proof; (v) the trial court's instructions violated defend-

ant's constitutional rights in that the instructions permitted jurors to reject a mitigating circumstance on the basis that it had no mitigating value; (vi) the trial court erred by denying defendant's motion to quash the murder indictment based on the form; (vii) the trial court committed reversible constitutional error by submitting the especially heinous, atrocious, or cruel aggravating circumstance based upon instructions that failed to adequately limit the application of this circumstance; (viii) the trial court's use of the term "may" in sentencing Issues Three and Four violated defendant's constitutional rights; (ix) the trial court erred by not submitting the nonstatutory mitigating circumstances that defendant was convicted on the testimony of an accomplice and that the codefendant received a more lenient sentence; and (x) the trial court violated defendant's right to a reliable capital sentencing proceeding and to due process of law by broaching the matter of appellate review during jury selection. We have considered defendant's arguments with regard to these issues and have found no compelling reasons to depart from our prior holdings which are dispositive. *See State v. Ward*, 338 N.C. 64, 122, 449 S.E.2d 709, 742 (1994), *cert. denied,* —— U.S. ——, 131 L. Ed. 2d 1013 (1995).

Defendant presents four other additional issues in order to preserve them for later review: (i) the trial court committed reversible error by denying defendant's motions for change of venue or individual *voir dire*; (ii) the trial court violated defendant's constitutional rights by denying defendant the right to examine each juror challenged by the State during death qualification prior to his or her excusal and by excusing jurors defendant was not permitted to question; (iii) the trial court's failure to impose a life sentence following a reasonable period of deliberations by the jury coerced the death verdict in violation of defendant's constitutional rights; and (iv) the trial court's failure to prevent the prosecutor's inflammatory sentencing proceeding argument denied defendant due process, the right to be free of cruel and unusual punishment, and assistance of counsel.

These issues are not proper preservation issues, as they are not determined solely by principles of law upon which this Court has previously ruled, but require a review of the transcript and record to determine whether, based on the specific facts, questions, or answers, the assignment of error has merit. Where counsel determines that an issue of this nature has no merit, counsel should "omit it entirely from his or her argument on appeal." *State v. Barton*, 335 N.C. 696, 712, 441 S.E.2d 295, 303 (1994). Nevertheless, we have con-

sidered defendant's arguments on these issues, have reviewed the transcript and record as to these assignments, and have found no error. These assignments of error are without merit.

## PROPORTIONALITY

[12] Having found defendant's trial and capital sentencing proceeding to be free of prejudicial error, we are required by N.C.G.S. § 15A-2000(d)(2) to review the record and determine (i) whether the record supports the jury's findings of the aggravating circumstances upon which the court based its death sentence; (ii) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (iii) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. *State v. McCollum,* 334 N.C. 208, 239, 433 S.E.2d 144, 161 (1993), *cert. denied,* ⸺ U.S. ⸺, 129 L. Ed. 2d 895 (1994).

The trial court submitted and the jury found two aggravating circumstances: (i) this murder was committed while defendant was engaged in the commission of robbery with a firearm, N.C.G.S. § 15A-2000(e)(5); and (ii) this murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9). After a thorough review of the transcript, record on appeal, and briefs and oral arguments of counsel, we are convinced that the jury's finding of each of these aggravating circumstances was supported by the evidence. We also conclude that nothing in the record suggests that defendant's death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor.

Finally, we must consider whether the imposition of the death penalty in defendant's case is proportionate to other cases in which the death penalty has been affirmed, considering both the crime and the defendant. *State v. Robinson,* 336 N.C. 78, 133, 443 S.E.2d 306, 334 (1994), *cert. denied,* ⸺ U.S. ⸺, 130 L. Ed. 2d 650 (1995). The purpose of proportionality review is "to eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury." *State v. Holden,* 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied,* 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Proportionality review also acts "[a]s a check against the capricious or random imposition of the death penalty." *State v. Barfield,* 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied,* 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). We compare this case to similar cases within a pool which we defined in *State v. Williams,* 308 N.C. 47, 79, 301 S.E.2d 335, 355, *cert. denied,*

464 U.S. 865, 78 L. Ed. 2d 177 (1983), and in *State v. Bacon,* 337 N.C. 66, 106-07, 446 S.E.2d 542, 563-64 (1994), *cert. denied* —— U.S. ——, 130 L. Ed. 2d 1083 (1995). Our consideration on proportionality review is limited to cases roughly similar as to the crime and the defendant, but we are not bound to cite every case used for comparison. *State v. Syriani,* 333 N.C. 350, 400, 428 S.E.2d 118, 146, *cert. denied,* 510 U.S. 948, 126 L. Ed. 2d 341 (1993). Whether the death penalty is disproportionate "ultimately rest[s] upon the 'experienced judgments' of the members of this Court." *State v. Green,* 336 N.C. 142, 198, 443 S.E.2d 14, 47, *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 547 (1994).

Defendant was convicted of first-degree murder based on both felony murder and premeditation and deliberation. He was also convicted of robbery with a firearm. The jury found both of the submitted aggravating circumstances: (i) that this murder was committed while defendant was engaged in the commission of robbery with a firearm; and (ii) that this murder was especially heinous, atrocious, or cruel.

The jury found six of the nine mitigating circumstances submitted for its consideration. While four statutory circumstances were submitted to the jury, only one was found: that defendant aided in the apprehension of a capital felon, N.C.G.S. § 15A-2000(f)(8). The jury declined to find the following statutory mitigating circumstances: (i) defendant has no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1); (ii) the age of defendant at the time of the murder, N.C.G.S. § 15A-2000(f)(7); and (iii) the catchall mitigating circumstance, N.C.G.S. § 15A-2000(f)(9). The nonstatutory mitigating circumstances found by the jury related to defendant's illegitimacy, his lack of a relationship with his natural father, his lack of a suitable male role model, his coming from a broken home where he was neglected by his mother, and defendant's actions in offering no resistance upon arrest and cooperating with law enforcement.

This Court has found the death sentence disproportionate on seven occasions. *State v. Benson,* 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes,* 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers,* 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young,* 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill,* 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant,* 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson,* 309 N.C. 26, 305 S.E.2d 703 (1983).

STATE v. ROWSEY

[343 N.C. 603 (1996)]

Of these seven cases, in only two, *Stokes* and *Bondurant*, did the jury find the aggravating circumstance that the murder was "especially heinous, atrocious, or cruel." Four of the seven cases found disproportionate by this Court involved murders committed during armed robbery: *State v. Benson, State v. Stokes, State v. Young*, and *State v. Jackson*. In three of these cases—*State v. Benson, State v. Stokes*, and *State v. Jackson*—the defendant was found guilty of felony murder only.

After comparing the present case with the above cases, we conclude that this case is not sufficiently similar to any of those cases in which the Court has previously found disproportionality to warrant a finding of disproportionality in this case.

We recognize that juries have returned life sentences for several robbery murders. However, this Court has long rejected any mechanical or empirical approach to the comparison of cases that are superficially similar. *State v. Robinson*, 336 N.C. at 139, 443 S.E.2d at 337. In conducting proportionality review, our attention is focused on an " 'independent consideration of the individual defendant and the nature of the crime or crimes which he has committed.' "*Id.* (quoting *State v. Pinch*, 306 N.C. 1, 36, 292 S.E.2d 203, 229, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), *overruled on other grounds by Rouse*, 339 N.C. 59, 451 S.E.2d 543, *by Robinson*, 336 N.C. 78, 443 S.E.2d 306, and *by Benson*, 323 N.C. 318, 372 S.E.2d 517).

We conclude that this case is most analogous to cases in which this Court has held the death penalty not to be disproportionate.

The most significant distinguishing features of this case are the killing of a lone employee in the early morning hours and the especially heinous, atrocious, or cruel nature of the killing. In *State v. Brown*, 315 N.C. 40, 337 S.E.2d 808 (1985), *cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by Vandiver*, 321 N.C. 570, 364 S.E.2d 373, the defendant robbed a convenience store, kidnapped the clerk, drove her to an isolated location, and shot her six times. *Id.* at 71, 337 S.E.2d at 830. In finding the death penalty proportionate, the Court emphasized that the robbery-murder occurred in the early morning hours when the lone employee was most vulnerable. *Id.* This Court also found the death penalty proportionate in *State v. Williams*, 305 N.C. 656, 292 S.E.2d 243, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), where the defendant robbed and killed the lone employees of a gas station and a convenience store in the early morning hours. *Id.* at 661-62, 690, 292 S.E.2d at 248, 263.

STATE v. ROWSEY

[343 N.C. 603 (1996)]

Defendant in the instant case robbed and murdered the sole employee of a convenience store in the early morning hours when the victim was the most vulnerable. The jury found that the killing was especially heinous, atrocious, or cruel; and this finding was amply supported by the evidence. Defendant shot the victim six times at close range; the medical examiner testified that two of the shots may have been fired while the victim was lying prone on the floor. After shooting the victim, defendant kicked the victim in the back of the head in an effort to ensure the victim's death. Further, the evidence revealed that the victim bled to death from a gunshot wound that pierced his lung, that none of the victim's injuries would have caused instantaneous death, and that the victim was alive and gasping for breath when defendant left the scene of the crime.

In light of the above, we find that this case rises to the level of cases in which this Court has approved the death penalty. Based on the experienced judgment of the members of this Court, we conclude that defendant's death sentence is not excessive or disproportionate.

We hold that defendant received a fair trial and capital sentencing proceeding free from prejudicial error. In comparing defendant's case to similar cases in which the death penalty was imposed and in consideration of both the crime and the defendant, we cannot hold as a matter of law that the death penalty was disproportionate or excessive.

NO ERROR.

Justice FRYE concurring in part, dissenting in part.

I concur in the Court's decision finding no prejudicial error in defendant's trial and conviction of first-degree murder. I dissent only as to the capital sentencing proceeding.

I disagree with the majority's treatment of the issue relating to the submission of the statutory mitigating circumstance that defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1). In this case, defendant objected to the submission of this mitigating circumstance, arguing that the evidence available to the State was such that no reasonable juror could find defendant's criminal history insignificant. The trial court denied defendant's request for a *voir dire* on the evidence available to the State, concluding that the matter presented a jury question. Defendant argues,

correctly I think, that no reasonable juror could have found it insignificant that he, a twenty-year-old youth, illegally possessed marijuana the day of the shooting, concealed the murder weapon on his person on a number of occasions in the days prior to the shooting, stole money from his girlfriend's mother days before the shooting, broke into a church and stole at least $900 worth of items weeks before the shooting, was convicted of two counts of larceny seven months prior to the shooting, and was convicted of fifteen counts of injury to property and an alcoholic beverage violation less than two years prior to the shooting.

Furthermore, I disagree with the majority's reliance on *State v. Walker*, where the majority of this Court held that absent extraordinary facts, the erroneous submission of a mitigating circumstance is harmless. *State v. Rowsey*, 343 N.C. 603, 620, 472 S.E.2d 903, 912 (1996). *See State v. Walker*, 343 N.C. 216, 228, 469 S.E.2d 919, 926 (1996) (Frye, J. concurring). Here, it appears that the decision of the trial court to submit the (f)(1) mitigating circumstance led to the State's introduction of "rebuttal" evidence at the capital sentencing proceeding that would not otherwise have been presented to the jury. The State was then free to argue to the jury that defendant did have a significant history of criminal activity despite the alleged contention to the contrary, thus belittling defendant's argument as to any mitigating circumstances. Since I am not convinced that without the rebuttal evidence the jury would nevertheless have recommended a sentence of death, I find the submission of the (f)(1) mitigating circumstance prejudicial error entitling defendant to a new capital sentencing proceeding.