STATE OF NORTH CAROLINA v. WILLIE JAMES ASBURY

No. 31

(Filed 4 November 1976)

**Criminal Law § 126— polling the jury — question of juror — response of judge not prejudicial**

      Where one juror, during the polling of the jury, asked why three questions were put to each juror and asked what the differences in

the questions were, the trial court's response to the juror's inquiry that all three questions would call for the same response, though erroneous, was not prejudicial to defendant, since the juror in question unequivocally assented to the verdict at least twice, the questions propounded were simple and self-explanatory, the attorneys argued on defendant's motion for mistrial in the jury's presence concerning the nature of the questions and a juror's right to dissent from the verdict, and there was substantial evidence adduced at trial pointing to defendant's guilt.

APPEAL by defendant as a matter of right under G.S. 7A-30(2) from the decision of the Court of Appeals, reported in 29 N.C. App. 291, 224 S.E. 2d 200 (1976) (Clark, J. dissenting), finding no error in judgment of *Kirby, J.* entered 14 May 1975, GASTON County Superior Court.

Defendant was tried under an indictment proper in form charging him with the crime of robbery with a firearm. Upon call of the case and upon motion of the State, defendant's case was consolidated for trial with that of Edward Conner, Jr., another defendant allegedly involved in the same robbery.

The evidence for the State tended to show that on 14 January 1975 at about 4:15 p.m., the defendant and Edward Conner, Jr. drove to the Fairview Grocery and Service Station in Gastonia. Upon entering the store, the defendant went to the candy counter and Conner went to the ice cream box. The defendant asked Raymond H. Robinson, the proprietor, for a candy bar located underneath the counter. When Robinson stood up from getting the candy, he saw the defendant pointing a small pistol at him. The defendant demanded money and instructed him to open the cash register. Conner searched Robinson and took his wallet along with $25.00 from the cash register. As they drove off, Robinson wrote down the license plate number of the vehicle.

At the trial Robinson identifed the defendant and Conner as the two people that robbed him on 14 January 1975. Other evidence for the State tended to show that defendant Conner had possession, at the time of the robbery, of a license plate identical to the one on the getaway car. The license tag in question had been in the trunk of a vehicle delivered to Conner for repair purposes.

The defendant relied upon alibi testimony from several witnesses but did not testify himself. Upon a verdict of guilty,

both defendants moved for a poll of the jury and the manner in which this poll was conducted is the subject of this appeal. The facts incident thereto will be related in the opinion.

*Attorney General Rufus L. Edmisten by Special Deputy Attorney General Robert P. Gruber for the State.*

*Goeffrey A. Planer for the defendant.*

COPELAND, Justice.

The defendant brings forward only one assignment of error, relating to the jury poll. In particular, the defendant cites as error the trial judge's interpretation of the three questions that were asked each juror by the clerk during the poll. "Was this your verdict? Is this now your verdict? Do you still agree and assent thereto?"

During the poll of the jury for the defendant Conner, as to juror David M. Houck, the following appears of record:

"CLERK: David M. Houck. (Stands.) Your foreman has reported to the Court a verdict of guilty of robbery with a firearm as to Edward Conner, Jr. Was this your verdict?

"DAVID M. HOUCK: (No response.)

"CLERK: Was this your verdict?

"DAVID M. HOUCK: Can I ask—uh. I hate to be—can I ask what the difference in the three questions is?

"THE COURT: I'm sorry. Will you phrase your question again?

"DAVID M. HOUCK: What are the differences in the three questions that she asked?

"THE COURT: I'll let her ask the questions again.

"CLERK: The three questions are: 'Was this your verdict? Is this now your verdict? Do you still agree and assent thereto?'

"DAVID M. HOUCK: What I'm asking is, why are there three questions?

"THE COURT: They would really call for the same response, I would say. I just don't know how better to explain. Ask the first question.

State v. Asbury

"CLERK: Was this your verdict?

"DAVID M. HOUCK: Yes, it was.

"CLERK: Is it now your verdict?

"DAVID M. HOUCK: (Long pause.) Yes.

"CLERK: Do you still agree and assent thereto?

"DAVID M. HOUCK: What would happen if I said no?

"MR. FUNDERBURK: (Counsel for Conner) Your Honor, I think that he should be instructed that he has a right to say no, and that he should do so, if he so feels.

"THE COURT: Well, sir. You will just have to answer the questions, and the Court will take such steps as must be taken, but you must answer the question. Ask the question again.

"CLERK: Do you still agree and assent thereto?

"DAVID M. HOUCK: Yes, sir."

When the jury was polled for defendant Asbury the following occurred when the Clerk reached David M. Houck:

"CLERK: David M. Houck. Your foreman has reported to the Court a verdict of guilty of robbery with a firearm as to Willie James Asbury. Was that your verdict?

"DAVID M. HOUCK: Yes, ma'am.

"CLERK: Is that now your verdict?

"DAVID M. HOUCK: Yes, ma'am.

"CLERK: Do you still agree and assent thereto?

"DAVID M. HOUCK: Yes, ma'am."

At the conclusion of the polling of the jury for each defendant, the following occurred:

"CLERK: Members of the jury, you have found the defendant, Willie James Asbury, guilty of robbery with a firearm. This is your verdict, so say you all?

"JURORS: Yes."

After the clerk had polled the last juror, both defendants moved for a mistrial based on Juror Houck's request for in-

structions and the court's failure to instruct. After the court heard arguments from counsel in the presence of the jury, the following exchange took place:

"THE COURT: Mr. Houck, stand up. (Mr. Houck stands.) Poll Mr. Houck again. Mr. Houck, listen to the questions. As I indicated to you, I think the questions are self-explanatory. Ask the juror the first question—

"MR. FUNDERBURK: Your Honor, if I might, I think the problem is Mr. Houck doesn't understand—

"THE COURT: All I want is Mr. Houck's verdict. That's all. With reference to what happens, that's of no concern to him. All I want to know is what his verdict is. So ask the questions again.

"CLERK: Mr. Houck, your foreman has reported to the Court a verdict of robbery with a firearm as to Edward Conner, Jr. Was this your verdict?

"MR. HOUCK: Yes, ma'am.

"CLERK: Is this now your verdict?

"MR. HOUCK: Yes, ma'am.

"CLERK: Do you still agree and assent thereto?

"MR. HOUCK: Yes, ma'am.

"THE COURT: Now, as to Mr. Asbury.

"CLERK: Your foreman has reported to the Court a verdict of guilty of robbery with a firearm as to Willie James Asbury. Was this your verdict?

"MR. HOUCK: Yes, ma'am.

"CLERK: Is this now your verdict?

"MR. HOUCK: Yes, ma'am.

"CLERK: Do you still agree and assent thereto?

"MR. HOUCK: Yes, ma'am.

"THE COURT: Now, Mr. Houck, is there any misunderstanding on your part about the time frame and the essence of those questions?

"MR. HOUCK: No, sir.

"THE COURT: MOTIONS FOR A MISTRIAL IS [sic] DENIED.

The North Carolina Constitution insures to each criminal defendant the right to a unanimous jury verdict:

"No person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N. C. Const. Art. I, § 24.

At least since 1877 our Court has held that a defendant has a constitutional right, upon timely request, to have the jury polled as a corollary to his right to a unanimous verdict. *State v. Young*, 77 N.C. 498 (1877). The function of the jury poll is:

" . . . to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned, and thus to enable the court and the parties to ascertain *with certainty* that a unanimous verdict has been in fact reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented." *Davis v. State*, 273 N.C. 533, 541, 160 S.E. 2d 697, 703 (1968).

Interestingly, at the time of the first reported case by our Court on this subject, *State v. Young, supra,* our Court required only that the clerk read the verdict, as reported by the foreman, to the jury and ask "So say you all?" At that point a juror could retract his assent for any reason. Later, in *Owens v. R. R. Co.,* 123 N.C. 183, 31 S.E. 383 (1898), this Court recognized that the abbreviated form of jury poll was insufficient to protect the defendant's right to a unanimous verdict at least where the juror appeared to be uncertain of his verdict. In *Owens v. R. R. Co., supra,* Justice Clark (later Chief Justice) speaking for our Court held that "[a]ny juror may dissent from a verdict, to which he has agreed in the jury room, at any time before it is received and entered up . . . " *Owens v. R. R. Co., supra* at 184, 31 S.E. at 383. In that case the jury had answered the issue of contributory negligence "no" and during the jury poll one of the jurors answered "I think she was to blame in part." The trial judge then asked the juror had he not consented to the jury's verdict in the jury room. Upon the juror's replying that he had so consented, the trial court accepted his verdict. Our Court held that it was error to receive the juror's verdict

without ascertaining whether, notwithstanding his remark, he still adhered to the assent given in the jury room.

More recently, in *State v. Boger,* 202 N.C. 702, 163 S.E. 877 (1932), this Court decided that a criminal defendant's right to have the jury polled is the right to have questions propounded to the jurors, individually, concerning " . . . whether each juror assented and still assents to the verdict tendered to the court." *State v. Boger, supra* at 704, 163 S.E. at 878. In *State v. Norris,* 284 N.C. 103, 199 S.E. 2d 445 (1973), this Court implicitly approved the three question formula used by the clerk of court in the instant case.

From the above authority, it is apparent that this Court, in assuring the unanimity of verdicts, is concerned with each juror's assent to the verdict at two different time periods. Because of the possibility of improper influence and coercion in the jury room, the questions must be designed to find out if the juror assented in the jury room and still assents in open court to the jury verdict.

Obviously, only two questions are necessary to elicit this information. The second question "Is this now your verdict?" relates to the same time period addressed in the third question "Do you still agree and assent thereto?" The second and third questions refer to the present in-court state of mind of the juror and serve only to emphasize by repetition that the crucial assent is the juror's assent to the verdict when he returns to the courtroom.

Given the foregoing, it is clear that the trial court's initial response to Juror Houck's inquiry was error. The questions do *not* all relate to the same time period and do *not* necessarily call for the same response. It remains to be determined whether this error was prejudicial. Upon examination of all the circumstances, we find the error was not prejudicial to this defendant.

It is noted first that the error occurred when Juror Houck was being questioned about his verdict as to defendant Conner. There was no hesitation whatsoever by the juror when questioned about his verdict as to defendant Asbury. Juror Houck was questioned twice individually and finally jointly with the other jurors as to his assent to the verdict against defendant Asbury and never wavered.

More importantly, a number of factors lead us to conclude that Juror Houck as well as the other jurors understood that they had a right to dissent from the verdict arrived at in the jury room. The questions addressed to the jurors were essentially self-explanatory. Counsel for each defendant on the motion for mistrial argued in the jury's presence concerning the nature of the questions and the right to dissent. Following these arguments by counsel and while the judge was still considering the motion for mistrial, the judge asked Juror Houck if there was any misunderstanding on his part "about the time frame and the essence of those questions." The juror replied "No, sir."

We have no way of knowing what prompted the original questions of Juror Houck during the jury poll for defendant Conner. A jury verdict is not defective if it appears that the juror eventually freely assented to the verdict. *See Owens v. R. R. Co., supra.* We are satisfied that Juror Houck understood his right to dissent and freely chose to affirm the verdict as to this defendant. We base this belief on the juror's unequivocal, multiple assents to the verdict, the simplicity of the questions propounded, the discussions of the attorneys in the jury's presence concerning the right to dissent, and the substantial evidence adduced at trial pointing to defendant's guilt. The defendant has failed to show prejudicial error, thus the decision of the Court of Appeals is

Affirmed.