STATE OF NORTH CAROLINA v. CLAUDE EDWARD DAMMONS

No. COA97-31

(Filed 2 December 1997)

**1. Criminal Law § 143 (NCI4th Rev.)— 1973 guilty plea—failure to inform defendant of certain constitutional rights—voluntary plea—no Boykin v. Alabama violation**

Defendant's 1973 guilty plea was not obtained in violation of *Boykin v. Alabama*, 395 U.S. 238, because the court that accepted the plea failed to inform defendant of his constitutional right to trial by jury, his right to confront his accusers, and his privilege against self-incrimination, where the evidence supported the trial court's finding that the 1973 plea was freely, voluntarily and understandingly entered by defendant.

**2. Evidence and Witnesses § 344 (NCI4th)— aggravated assault—details of other assaults—cross-examination proper**

In a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury, the State's cross-examination of defendant about the names of other women he had been convicted of shooting, his relationship with those other women, and the type of weapons he had used was proper under Rule 404(b) to show that defendant had a history of shooting women with whom he had previously had relationships. N.C.G.S. § 8C-1, Rule 404(b).

**3. Searches and Seizures § 45 (NCI4th)— unlawful detention—seizure after subsequent lawful arrest**

Even if defendant's detention in a patrol car was an unlawful arrest, officers lawfully searched defendant without a warrant and properly seized his overcoat and gunshot residue from his hand after his lawful arrest at the sheriff's office based upon probable cause.

**4. Criminal Law § 925 (NCI4th Rev.)— polling of jury—failure to state full verdict—unanimous verdict**

The jury returned a unanimous verdict, even though the clerk of court did not state the full verdict of "guilty of assault with a deadly weapon inflicting serious injury" when polling the individual jurors but just stated "guilty of assault with a deadly weapon," where only one crime was charged and submitted to the jury, and

the clerk correctly stated the charge when originally asking the foreperson about the verdict.

5. **Criminal Law § 1313 (NCI4th Rev.)— habitual felon charge—underlying conviction—collateral attack**

Defendant could not collaterally attack the validity of an underlying conviction that supported an habitual felon charge; rather, the original conviction could be properly attacked only by appropriate post-trial relief motions.

Appeal by defendant from an order and judgment dated 4 March 1996 and from judgment dated 6 March 1996 by Judge Wiley F. Bowen in Lee County Superior Court. Heard in the Court of Appeals 22 October 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General Wm. Dennis Worley, for the State.*

*Staton, Perkinson, Doster, Post, Silverman, Adcock & Boone, by Norman C. Post, Jr., and Michelle A. Cummins, for defendant appellant.*

GREENE, Judge.

Claude Dammons (defendant) appeals from: (1) the trial court's denial of his motion for appropriate relief from a 1973 conviction of voluntary manslaughter (72 CRS 7307); (2) the trial court's denial of his motion for appropriate relief from a 1994 conviction of assault with a deadly weapon with intent to kill inflicting serious injury as a habitual felon (94 CRS 1031 and 94 CRS 2227); (3) the trial court's re-sentencing in 94 CRS 1031 and 94 CRS 2227; (4) a 1996 conviction of assault with a deadly weapon inflicting serious injury as a habitual felon (93 CRS 1969 and 93 CRS 2813).

The relevant facts for each motion and the conviction are as follows:

### Motion for Appropriate Relief in 72 CRS 7307

On 22 March 1973, the defendant was convicted of voluntary manslaughter in 72 CRS 7307 pursuant to a guilty plea. The transcript from this conviction reveals that the trial court asked the defendant the following questions concerning his guilty plea:

**STATE v. DAMMONS**

[128 N.C. App. 16 (1997)]

The court:          Do you understand you are charged with the offense of murder and you are tendering a plea of guilty to the offense of voluntary manslaughter?

The defendant: Yes, sir.

The court:          Have these charges been explained to you by your attorney and are you ready for this hearing upon your plea?

The defendant: Yes, sir.

The court:          Do you understand that you have a right to plead not guilty of any offense and have your cause heard by a jury?

The defendant: Yes, sir.

. . . .

The court:          Now, if you did serve witnesses, have you had an opportunity to obtain those witnesses?

The defendant: No, sir.

The court:          Do you want witnesses for this hearing?

The defendant: I had like—

The court:          Has anyone prohibited you from obtaining witnesses you might want?

The defendant: No, sir.

The court:          I take it the answer to the question is yes, you had a chance to get witnesses if you want one [sic]?

The defendant: Yes, sir.

The court:          Have you had an opportunity to confer with your attorney and have you conferred with him and are you satisfied with his services?

The defendant: Yes, sir.

The court:          Now, has the solicitor, your attorney, any policeman, et cetera, or any other person made any promise to you or any threat to influence you to plead guilty?

The defendant: No, sir.

The court: Do you contend or say that anyone has violated any of your constitutional rights with respect to this case?

The defendant: No, sir.

The court: Do you now freely understand and voluntarily authorize and instruct your attorney to enter a plea of guilty in your behalf?

The defendant: Yes, sir.

In 1996, the defendant made a motion for appropriate relief from 72 CRS 7307 and asserted that conviction was obtained in violation of his federal constitutional rights as defined by *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274 (1969), because the record fails to show that the defendant's guilty plea had been made freely and voluntarily and with full understanding of the constitutional rights he had waived. The trial court denied the motion for appropriate relief, stating that the "written transcript of plea clearly shows the plea to be 'freely, voluntarily, and understandingly' made, and that the defendant had been 'fully advised of his rights.' "

## Motion for Appropriate Relief in 94 CRS 1031 and 94 CRS 2227

In May of 1994 the defendant was convicted of assault with a deadly weapon inflicting serious injury and of being a habitual felon in 94 CRS 1031 and 2227. The defendant appealed and this Court granted a re-sentencing because of errors in the sentencing phase of the habitual felon trial. In March of 1996, the defendant asked for a motion for appropriate relief in 94 CRS 1031 and 2227 on the basis that he was given ineffective assistance of counsel in the initial proceedings of 94 CRS 1031 and 2227 because his counsel allowed him to plead guilty to habitual felon status in 94 CRS 2227 and failed to challenge the 72 CRS 7307 conviction as being in violation of *Boykin*. The trial court denied this motion for appropriate relief and concluded that the ineffective counsel allegations were not "supported by credible factual evidence," and even if the counsel's actions were "marginally deficient . . . they produced no prejudice to the petitioner."

STATE v. DAMMONS

[128 N.C. App. 16 (1997)]

## Conviction in 93 CRS 1969 and 93 CRS 2813

In March 1994, the defendant was convicted of assault with a deadly weapon with intent to kill inflicting serious injury in 93 CRS 1969 and was convicted of being a habitual felon in 93 CRS 2813. The defendant had pled not guilty to the charges. After the conviction, the defendant appealed to this Court and was granted a new trial. This new trial in 93 CRS 1969 and 2813 was held in March of 1996 and the defendant was again convicted of assault with a deadly weapon with intent to kill inflicting serious injury and of being a habitual felon. The defendant appeals from this second trial. These convictions are based on the following facts:

On 27 February 1993, the defendant, Mary McLaughlin (McLaughlin), and Eloise Headen (Headen), were driving a gray four-door automobile. They stopped at a country church where the defendant and Headen proceeded to walk to the cemetery. Later that morning, Lee County Sheriff's Department Detective, Billy Baker (Detective Baker), responded to a call in reference to a shooting in front of the Short Stop convenience store in Lee County. When Detective Baker arrived at the Short Stop, a large gray Buick was parked outside; Headen was inside the automobile with gunshot wounds. The clerk from the Short Stop had stated to Officer Kenneth Womack and Deputy Loren Lewis (Officers) that a black male had driven a gray Buick into the parking lot and then came inside and told him (the clerk) to call the rescue squad. The black male then went to the adjoining barbershop. When the Officers approached the barbershop, they observed the defendant, who matched the clerk's description, leaving the barbershop. The Officers asked the defendant a few questions but he did not answer and continued to walk away. He was then handcuffed and placed in the patrol car. When Detective Baker arrived, the defendant got out of the patrol car in handcuffs and proceeded to walk away. Detective Baker stopped the defendant and put him back in the patrol car. The defendant was then transported to the Lee County Sheriff's Department where he was placed under arrest and a long beige overcoat was taken from him and his hands were wiped for gunshot residue. No blood was observed on the defendant's clothes nor were any weapons found in his possession.

At trial, Headen testified that the defendant had shot her three times at the graveyard. Evidence was introduced which showed that Headen was intoxicated that day and that she had used cocaine on the morning of the shooting. In his own defense, the defendant denied

shooting Headen at the cemetery and testified that an individual named Pulley came to the cemetery and argued with Headen. The defendant testified that he left Headen and Pulley at the cemetery. Because the defendant lived behind the Short Stop, when he observed a crowd gathered there, he walked to the store. He was then handcuffed and put in the patrol car. On cross-examination the State was allowed, over the objection of the defendant, to ask the defendant about his prior criminal convictions and particular details of the past convictions.

The defendant filed a motion to suppress evidence seized from his person (the beige overcoat and gunshot residue) on the grounds that his detention in the patrol car amounted to an unlawful arrest that was not based on probable cause and therefore the evidence seized from him was illegally obtained. The trial court concluded that there existed probable cause to arrest the defendant at the Lee County Sheriff's Department and denied the defendant's motion.

The jury returned a verdict of guilty in 93 CRS 1969. The transcript reveals that the following transpired:

Clerk: Members of the jury, will you please stand. Members of the jury, you have returned as your unanimous verdict to the defendant, Claude Edward Dammons, guilty of assault with a deadly weapon inflicting serious injury. Is this your verdict?

Foreperson: It is.

Clerk: Is this still your verdict?

Foreperson: Yes.

The verdict sheet in 93 CRS 1969 indicated that the jury found the defendant guilty of assault with a deadly weapon inflicting serious injury. Thereafter, however, the defendant's attorney asked that the jury be polled. In polling the jury, the clerk of court did not fully state the whole charge against the defendant and instead, stated the following:

If you'll be seated, when I call your name if you'll stand and answer the questions that I ask you. And I'll start with the foreperson, Mr. Parkerson. Mr. Parkerson, you have returned as your verdict, guilty of assault with a deadly weapon to Claude Dammons, is this your verdict?

The foreperson assented to the question and each juror answered that the verdict given by the foreperson was still his or her verdict.

The trial court denied the defendant's motion to suppress his 72 CRS 7307 conviction in his sentencing as a habitual felon in 94 CRS 2227 and 93 CRS 2813.

---

The issues are whether: (I) the conviction in 72 CRS 7307 was obtained in violation of *Boykin v. Alabama*; (II) the defendant's conviction as a habitual felon in 94 CRS 2227 resulted from ineffective assistance of counsel; (III) the State was allowed to exceed the permissible scope of cross-examination in 93 CRS 1969; (IV) Detective Baker had authority to seize the defendant's beige overcoat and obtain gunshot residue from the defendant's hand; (V) the clerk of court's misstatement of the verdict when polling the jury constituted reversible error; and (VI) the defendant's conviction in 72 CRS 7307 was appropriately used for sentencing purposes in 94 CRS 2227 and 93 CRS 2813.

I

This Court may review a trial court's ruling on a motion for appropriate relief if "the time for appeal has expired and no appeal is pending, by writ of certiorari." N.C.G.S. § 15A-1422(c)(3) (1988); *State v. Morgan*, 118 N.C. App. 461, 463, 455 S.E.2d 490, 491 (1995). In this case, the defendant pled guilty in 72 CRS 7307 and no appeal was made from that conviction. In our discretion and in accordance with Rule 2 of the North Carolina Rules of Appellate Procedure, we nonetheless accept certiorari and address the merits of defendant's argument.

[1] The defendant contends that his conviction (based on a plea of guilty) in 72 CRS 7307 was obtained in violation of *Boykin v. Alabama* because the record does not show that the trial court which accepted his guilty plea specifically informed the defendant of his constitutional rights to trial by jury, the right to confront his accusers, and the privilege against compulsory self-incrimination. We disagree.

A trial court accepting a plea of guilty from a defendant is required to "make sure [that the defendant] has a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244, 23 L. Ed. 2d at 280. Furthermore the face of the record must reveal that the confession was voluntary and intelligently and under-

standingly entered. *Boykin,* 395 U.S. at 242 and 244, 23 L. Ed. 2d at 279-80; *State v. Ellis,* 13 N.C. App. 163, 165, 185 S.E.2d 40, 42 (1971) (guilty plea will not be disturbed if evidence supports finding of trial court that the defendant freely, understandingly, and voluntarily pleaded guilty). There is no constitutional requirement that the trial court specifically inform the defendant of his right to trial by jury, his right to confront his accusers, and his privilege against compulsory self-incrimination.[1] *See* LaFave and Israel, *Criminal Procedure* § 20.4(e) at 651 (1984); *see also Brady v. United States,* 397 U.S. 742, 743-44, 25 L. Ed. 2d 747, 753-54 (1970) (guilty plea sustained on finding that it was "voluntarily and knowingly made," even though defendant had not specifically been informed of the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers); *State v. Harris,* 14 N.C. App. 268, 270, 188 S.E.2d 1, 2 (1972) (confession set aside, based on *Boykin,* where record was devoid of anything that would indicate that the trial court made any inquiry into whether the guilty plea was voluntarily made and knowingly entered).

In this case, the trial court determined that the 1973 plea was "freely, voluntarily, and understandingly" entered by the defendant. Our review of the dialogue between the trial judge and the defendant reveals evidence to support this determination. *See State v. Blake,* 14 N.C. App. 367, 371, 188 S.E.2d 607, 610 (1972). Accordingly, this motion for appropriate relief was properly denied by the trial court.

## II

N.C. Gen. Stat. § 15A-1422(c)(2) gives a defendant an appeal of right from a denial of a motion for appropriate relief when "an appeal is pending when the ruling is entered . . . ." N.C.G.S. § 15A-1422(c)(2) (1988). In this case, the trial court denied the motion for appropriate relief in 94 CRS 1031 and 2227 on 13 March 1996, but the defendant had already given notice of appeal from the re-sentencing of those cases. The State argues that the defendant does not have an appeal of right from the denial of the motion for appropriate relief because the defendant appealed from the re-sentencing and no appeal from

---

1. Pursuant to a statute now in place (not effective at the time the defendant pled guilty in 1973) a superior court judge may not accept a plea of guilty or no contest from a defendant ("[e]xcept in the case of corporations or in misdemeanor cases in which there is a waiver of appearance") "without first addressing him personally . . . and [i]nforming him that [among other things] he has a right to remain silent and that any statement he makes may be used against him"; he has a right to a trial by jury and waives that right by pleading guilty; and he has a "right to be confronted by the witnesses against him." N.C.G.S. § 15A-1022(a) (Supp. 1996).

the conviction was pending. We assume without deciding, however, that an appeal pending from the re-sentencing qualifies under section 15A-1422(c)(2). Therefore, this Court must review the denial of the motion for appropriate relief.

The defendant contends that he pled guilty and was sentenced as a habitual felon in 94 CRS 2227 because of ineffective assistance of counsel. The basis of this argument is that had his counsel performed adequate research, he would have found that the defendant's conviction in 72 CRS 7307 was obtained in violation of *Boykin* and that armed with that knowledge the defendant would not have pled guilty in 94 CRS 2227. Because we have held that the 72 CRS 7307 conviction was not obtained in violation of *Boykin*, we reject the defendant's argument.

### III

[2] The defendant argues that the trial court permitted the State to exceed the permissible scope of cross-examination when it allowed the State to examine him about the details of his prior convictions. We disagree.

We acknowledge that Rule 609(a) of the North Carolina Rules of Evidence limits the scope of inquiry into prior convictions "to the name of the crime, the time and place of conviction, and the punishment imposed." *State v. Lynch*, 334 N.C. 402, 409, 432 S.E.2d 349, 352 (1993). Rule 404(b), however, allows relevant evidence of other crimes, wrongs or acts by the defendant unless the *only* probative value of the evidence is to show that the defendant had the "propensity or disposition to commit an offense of the nature of the crime charged." *State v. White*, 340 N.C. 264, 284, 457 S.E.2d 841, 852 (1995) (citation omitted), *cert. denied*, 516 U.S. 994, 133 L. Ed. 2d 436 (1995). Two further constraints, similarity and temporal proximity, also limit the inclusion of evidence under Rule 404(b). *State v. Artis*, 325 N.C. 278, 299-300, 384 S.E.2d 470, 481-82 (1989), *judgment vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990), *on remand*, 329 N.C. 679, 406 S.E.2d 827 (1991). When the features of the other crimes or wrongs are similar to the crime at issue and there is not a significant length of time between those past acts and the present one, the evidence has probative value. *Id.*

In this case, the trial court allowed the State to ask the defendant questions about the names of other women he had been convicted of shooting, his relationship with those other women, and type of

weapons he had used. The State contends that this evidence tended to show that the defendant had a history of shooting women with whom he had previously had relationships and thus admissible under Rule 404(b). We agree and reject, because of the similarities between the prior crimes and the present one, the contention that its only probative value was to show the defendant's propensity to commit crimes of the nature of the offense charged in this case. *See Lynch*, 334 N.C. at 412, 432 S.E.2d at 354 (evidence of prior crimes not admissible because no logical relationship to present charges).

## IV

[3] The defendant argues that he was arrested when he was detained in the patrol car and that there did not exist probable cause to support the arrest without a warrant. It follows, the defendant argues, that the evidence taken from him was illegally obtained and should have been suppressed.

Assuming the defendant's detention in the patrol car was an unlawful arrest, the trial court's denial of the motion to suppress is nonetheless proper because the overcoat and the gun residue were not seized until the defendant was taken to the Lee County Sheriff's Department and arrested. At that point, the trial court concluded that there existed probable cause to arrest the defendant and the defendant does not argue otherwise. *See* N.C.G.S. § 15A-401(b)(2)(a) (Supp. 1996) (officer may arrest without warrant if he has probable cause to believe a felony has been committed). Once the arrest occurred, the officers were within their authority to search the defendant without a warrant. *State v. Mack*, 57 N.C. App. 163, 167, 290 S.E.2d 741, 743 (1982).

## V

[4] Our Supreme Court has noted that defendants may poll the jury and ascertain whether the jurors assented in both the jury room and in open court to the verdict. *State v. Asbury*, 291 N.C. 164, 169-70, 229 S.E.2d 175, 177-78 (1976). *See also State v. Harrison*, 20 N.C. App. 734, 734 and 736, 203 S.E.2d 89, 90 and 91 (1974) (finding that when a foreperson of the jury suffered a slip of the tongue in delivering the verdict and stated, "guilty of voluntary—of murder in the second degree" when the defendant had been convicted of second degree murder, there was no prejudicial error because all the jurors assented to the verdict when asked and the defendant had the right to have the jury polled).

The defendant contends that because the clerk of court did not state the full verdict of "guilty of assault with a deadly weapon inflicting serious injury" when polling the jurors and instead just stated "guilty of assault with a deadly weapon," the jury did not return a unanimous verdict. We disagree.

In this case, there was no room for confusion as to the defendant's conviction because only one crime was charged and submitted to the jury. In addition, the record clearly indicates that the clerk of court correctly stated the charge when originally asking the foreperson about the verdict.

Clerk:      Members of the jury will you please stand. Members of the jury, you have returned as your unanimous verdict to the defendant, Claude Edward Dammons, guilty of assault with a deadly weapon inflicting serious injury. Is this your verdict?

Foreperson: It is.

Clerk:      Is this still your verdict?

Foreperson: Yes.

The clerk did misstate the charge when individually polling the jurors and only stated, "guilty of assault with a deadly weapon"; however, this was not reversible error and we find the defendant's argument unpersuasive.

## VI

[5] This Court has previously held that a defendant may not collaterally attack the validity of underlying convictions that support a habitual felon charge. *State v. Creason*, 123 N.C. App. 495, 500, 473 S.E.2d 771, 773 (1996), *affirmed per curiam*, 346 N.C. 165, 484 S.E.2d 525 (1997). In appealing the use of a prior conviction in a habitual felon charge, the defendant is limited to inquiring whether the State gave the defendant proper notice that he would be prosecuted for a substantive felony as a repeat offender. *Id.* The original conviction is properly attacked by making the appropriate post trial relief motions as prescribed by Chapter 15A, Article 89 of the North Carolina General Statues. *Id.*

In this case, the defendant improperly attacks the validity of his 72 CRS 7307 conviction in the later habitual felon trials. Any constitutional errors in the 72 CRS 7307 conviction must be addressed

directly. The defendant has made a motion for appropriate relief in 72 CRS 7307 and we have already addressed that issue. Accordingly, the collateral attack is impermissible and we overrule it.

No error.

Judges JOHN and TIMMONS-GOODSON concur.