STATE OF NORTH CAROLINA v. GERARD PAUL HOLADIA and
DEMETRIUS MONTEL COOPER

No. COA00-1162

(Filed 19 March 2002)

**1. Evidence— prior crime or bad acts—drug activity— motive—context and circumstances of crime**

The trial court did not err in an armed robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury case by allowing one of the victims to testify under N.C.G.S. § 8C-1, Rule 404(b) regarding defendant's prior drug activity, because: (1) the evidence was relevant to show defendant's possible motive in the robbery; (2) the evidence establishes the immediate context and circumstances of the crime; and (3) the fact that the drug transaction occurred four years before this crime did not preclude the admissibility of the evidence, but rather affected the weight to be given that evidence.

---

STATE v. HOLADIA

[149 N.C. App. 248 (2002)]

**2. Evidence— testimony—vendetta by defendant against victim**

Even assuming that the trial court erred in an armed robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury case by allowing one of the victims to testify under N.C.G.S. § 8C-1, Rule 602 regarding a vendetta by defendant against one of the other victims, the error was harmless because: (1) the testimony merely corroborated the testimony of another witness; and (2) defendant failed to object when similar testimony was presented.

**3. Discovery— recanted testimony of coparticipant's identification—motion for mistrial—failure to show prejudice**

The trial court did not err in an armed robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury case by denying defendant's motion for a mistrial based on the State's failure to disclose alleged exculpatory evidence favorable to the codefendant regarding a witness's recanting his earlier identification of the second man present during the robbery, because: (1) defendant ultimately received the requested information at trial; (2) defendant's identity was not in dispute; and (3) defendant failed to show how he was prejudiced by the nondisclosure prior to trial.

**4. Assault— deadly weapon inflicting serious injury—acting in concert—motion to dismiss—sufficiency of evidence**

The trial court did not commit plain error by denying defendant's motion to dismiss the charge of assault with a deadly weapon inflicting serious injury based on the trial court's instructions on acting in concert, because: (1) the trial court properly instructed on acting in concert; and (2) the evidence revealed that defendant acted in concert with another to commit the robbery, and the shooting of the victim by the other person was part of a course of conduct by the two assailants to gain control over the occupants to rob them.

**5. Constitutional Law— right to unanimous verdict—right to have jury polled**

The trial court erred in an armed robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury case by failing to correctly poll the individual jurors as required by N.C.G.S. § 15A-1238 and N.C. Const. Art. I, Sec. 24, because: (1) defendant was entitled as a matter of right to insist that a specific

question be addressed to and answered by each juror in open court as to whether he or she assented to the verdict; and (2) the questioning of the jury collectively and having all the jurors respond collectively by raising their hands failed to meet the statutory mandate that the jury be polled individually.

Appeals by both defendants from judgments entered 28 April 2000 by Judge William C. Griffin, Jr. in Hyde County Superior Court. Heard in the Court of Appeals 12 September 2001.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Lorinzo L. Joyner and Assistant Attorney General E. Clementine Peterson, for the State.*

*McCotter, McAfee & Ashton, P.L.L.C., by Rudolph A. Ashton, III and Terri W. Sharp, for defendant-appellant, Holadia.*

*Everett & Hite, L.L.P., by Kimberly A. Swank, for defendant-appellant, Cooper.*

TYSON, Judge.

Gerard Paul Holadia ("Holadia") and Demetrius Montel Cooper ("Cooper") appeal the entry of judgments following a jury verdict finding both guilty of two counts of armed robbery with a dangerous weapon and one count of assault with a deadly weapon inflicting serious injury. We hold there is no error as to defendant Holadia. We reverse and remand for a new trial as to defendant Cooper.

## I. Facts

Evidence presented at trial tended to establish that on 14 June 1999 two men with guns entered a trailer and robbed the occupants, Eddie Spencer ("Eddie"), Fabian Spencer ("Fabian"), Clinton Spencer ("Clinton"), and Michelle Davis ("Michelle"), in Hyde County, North Carolina.

Eddie and Fabian testified that they heard a knock on the door. Fabian asked who was at the door. The response was "G", the nickname of Holadia. Both also testified that after Fabian opened the door two men entered the trailer with guns. Eddie testified that he saw Holadia with a sawed-off shotgun and that he grabbed the gun. Holadia responded "you don't see my man standing to the door with the gun to your head?"

Eddie informed Holadia that Clinton was in the bedroom and walked back to the bedroom with Holadia. Holadia ordered Clinton, Michelle, and Eddie to go to the front room and lay down on the floor. Holadia told them to empty their pockets. Eddie testified that Holadia asked "where's the money" and "where's the AK-47."

Fabian remained on the bed in the living room. Fabian testified that Cooper remained standing at the door, threatening them, pointing a silver gun back and forth. Cooper then shot Fabian in the leg. Fabian testified that Holadia had taken a glass door from the stereo cabinet and tried to break it on Clinton's back. Fabian told Holadia about the money box located in the stereo. Holadia threw the box at Fabian, who opened the combination lock and gave the money to Holadia.

Eddie testified that before they left Holadia and Cooper kicked him and pistol-whipped him. Eddie further testified that Holadia said to him "why did you bring that undercover to my house," referring to a previous drug deal with an undercover police officer.

When the investigating officers arrived, all four victims immediately identified Holadia and stated that they had known Holadia for at least ten years prior to the robbery. Eddie, Fabian, and Clinton testified at trial that Holadia was the person in the trailer with the sawed-off shotgun. Michelle testified that it was too dark for her to identify either of the two men.

All four victims testified that they did not know the identity of Cooper on the night of the robbery. Eddie and Fabian testified that Cooper had come to the trailer twice before. Both picked out Cooper's picture during photo identification. In a third statement to the investigating officers, Fabian recanted his identification of Cooper stating "[w]ell, I now feel like he didn't do it because I really [had] time to think about it. When it happened, different people were telling me Mr. Cooper had done it, had did it. But I really felt in my heart that he didn't do it."

Eddie and Fabian testified that Cooper was the other man in the trailer on the night of the robbery. Fabian testified that the reason he recanted his identification was because he had found religion and did not want Cooper to be away from his baby. Clinton testified that because of his view and eyesight he could not identify the other man. Michelle testified that it was dark, and that she could not identify either of the two men in the trailer on the night of the robbery. She

further testified that during the photo identification she picked out photographs of Cooper and another man. Michelle also stated that she identified Cooper's photograph as a result of pressure from the police and district attorney.

Cooper and his girlfriend, Constance Intaya Betts ("Betts"), testified that on the night of the robbery Betts picked up Cooper at the house of Tammy Shelton. Cooper and Holadia were both at Shelton's house. Cooper testified that he did not speak with anyone while there and did not know Holadia. Betts testified that upon arriving at Shelton's house, Holadia opened the door and she asked him where Cooper was. Holadia asked her "who" and she responded "a dark skinned guy" and Holadia said "oh yeah, he's sittin' in the living room." Betts further testified that Holadia acted as if he did not know Cooper.

The jury returned with the verdicts and the court confirmed that the jury had unanimously found Holadia guilty on all charges. As the court was reading the guilty verdict for Cooper, Holadia spoke out stating "Your Honor, in fact, he is not guilty; I am guilty. He is not guilty. I know for a fact. I did, I did commit these robberies, and he is not guilty." The court confirmed that the jury had unanimously found Cooper guilty on all charges.

Defendants' counsel requested polling of the jury. Again Holadia spoke out and requested to approach the bench. The court denied his request and instructed Holadia to sit down. The jury was individually polled with respect to Holadia and all confirmed a verdict of guilty on all charges. The court began to individually poll the jurors with respect to Cooper when Holadia continued to state that he committed the robberies as a vendetta and that Cooper was innocent.

Juror No. 12, the Foreman, asked the court about Holadia's post-trial statements. The court instructed the jury "your verdict is supposed to be based upon the evidence that was presented from the witness stand and the law." Juror No. 12 and Juror No. 10 asked to reconvene with respect to Cooper. The trial court allowed the jury to continue their deliberations stating "keeping in mind what I just told you that what's been said here is not evidence." During the recess, Holadia declined to name the other individual who participated in the robbery.

The court brought the jury back into the courtroom after three minutes. After Holadia was removed for further disruptions, the court

polled each juror. The court asked each juror "whether [they] assented to [the verdict] at the time that the unanimous verdict was reached in the jury room." All twelve jurors assented to the guilty verdict with respect to Cooper.

## II. Issues

Holadia argues on appeal that the trial court erred in (1) allowing Eddie Spencer to testify regarding prior drug activity, (2) allowing Fabian Spencer to testify regarding a vendetta by defendant against Eddie Spencer, (3) denying his motion for a mistrial based on the State's failure to disclose exculpatory evidence favorable to Cooper, and (4) denying his motion to dismiss the charge of assault with a deadly weapon inflicting serious injury.

Cooper argues on appeal that the trial court erred in: (1) failing to correctly poll the individual jurors and entering judgment after one juror did not assent, (2) denying his motion for a mistrial based on the State's failure to disclose exculpatory evidence, and (3) denying his motion for a new trial based on newly discovered evidence.

## III. Defendant Holadia's Appeal

## A. Prior Drug Activity

[1] Defendant Holadia argues that the admission of testimony by Eddie Spencer that he was kicked, pistol-whipped, and asked by Holadia "why did you bring the undercover to my house" violated Rule 404(b) and Rule 403 of the North Carolina Rules of Evidence.

Rule 404 (b) of the North Carolina Rules of Evidence provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (1999). "Our Supreme Court has held that Rule 404(b) states a clear general rule of inclusion of relevant evidence of other crimes, wrongs or acts by a defendant, subject to one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Barnett*, 141 N.C. App. 378, 389, 540 S.E.2d 423, 431 (2000) (citing *State v.*

*Coffey,* 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990)), *appeal dismissed and review denied,* 353 N.C. 527, 549 S.E.2d 552 (2001) (emphasis in original omitted). "Accordingly, although 'evidence may tend to show other crimes, wrongs, or acts by the defendant and his propensity to commit them, it is admissible under Rule 404(b) so long as it also is relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried.' " *State v. Blackwell,* 133 N.C. App. 31, 34-35, 514 S.E.2d 116, 119 (quoting *State v. Morgan,* 315 N.C. 626, 637, 340 S.E.2d 84, 91 (1986)), *cert. denied,* 350 N.C. 595, 537 S.E.2d 483 (1999).

The State argues that the prior drug transaction in which Eddie Spencer brought in an undercover officer was relevant to Holadia's possible motive in the robbery. *See State v. Emery,* 91 N.C. App. 24, 370 S.E.2d 456 (1988) (defendant's sale of marijuana had some probative value concerning defendant's motive in the shooting); *State v. Lundy,* 135 N.C. App. 13, 519 S.E.2d 73 (1999) (defendant's drug dealing activities were relevant to show defendant's motive for murdering the victim), *disc. review denied,* 351 N.C. 365, 542 S.E.2d 651 (2000).

The State further argues that Holadia's prior drug activity with Eddie Spencer establishes the immediate context and circumstances of the crime. *See State v. Agee,* 326 N.C. 542, 546, 391 S.E.2d 171, 173 (1990) (defendant's alleged wrongful conduct was admissible to establish the "chain of circumstances" of the crime charged). Under this principle, when evidence leading up to a crime is part of the scenario which helps explain the setting, there is no error in permitting the jury to view the criminal episode in the context in which it happened. *Id.* at 549, 391 S.E.2d at 175 (holding evidence of "other wrongs" is admissible for the purpose of " 'complet[ing] the story of a crime by proving the immediate context of events near in time and place' ") (quoting *United States v. Currier,* 821 F.2d 52, 55 (1st Cir. 1987)).

Holadia argues that should the testimony be admissible within Rule 404(b) it should have been excluded pursuant to Rule 403 because it was prejudicial and remote in time.

Rule 403 of the North Carolina Rules of Evidence provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by con-

siderations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C. Gen. Stat. § 8C-1, Rule 403 (1999). The exclusion of the evidence under Rule 403 is a matter generally left to the sound discretion of the trial court. *State v. Lemons*, 348 N.C. 335, 353, 501 S.E.2d 309, 320 (1998) (citing *State v. Syriani*, 333 N.C. 350, 379, 428 S.E.2d 118, 133, *cert. denied*, 510 U.S. 948, 127 L. Ed. 2d 341 (1993)), *vacated*, 527 U.S. 1018, 144 L. Ed. 2d 768 (1999). Abuse will be found only where the trial court's ruling is "manifestly unsupported by reason or is so arbitrary it could not have been the result of a reasoned decision." *Id.*

Our Supreme Court held that " '[r]emoteness in time is less significant when the prior conduct is used to show . . . motive . . . remoteness in time generally affects only the weight to be given such evidence, not its admissibility.' " *State v. White*, 349 N.C. 535, 553, 508 S.E.2d 253, 265 (1998) (quoting *State v. Stager*, 329 N.C. 278, 307, 406 S.E.2d 876, 893 (1991)). The fact that Holadia's drug transaction with Eddie occurred four years before this crime did not preclude the admissibility of the evidence, but rather affected the weight to be given that evidence. *Barnett*, 141 N.C. App. at 390-91, 540 S.E.2d at 431 (fact that defendant's conviction for forgery occurred several years before did not preclude the admissibility of the evidence; instead the passage of time affected the weight to be given that evidence) (citations omitted). We hold that the trial court did not commit error in admitting this testimony into evidence.

## B. Vendetta Testimony

[2] Fabian Spencer testified that while defendant Holadia was kicking and pistol-whipping his brother, Eddie, Holadia said that he ought to kill Eddie because he "did four months behind him." Fabian stated "I guess it was a vendetta." Upon objection by defendant, the court instructed the witness not to guess. The prosecutor asked Fabian "do you know what he meant by that, that he has done four months behind him?" Fabian responded "yes sir, because [there] were some charges that were passed out, and everybody thought Eddie had did it."

Holadia argues that the admission of this testimony by Fabian violated Rule 602 because the statements were not based on his own knowledge but on "pure speculation and conjecture." Rule 602 of the North Carolina Rules of Evidence provides:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself.

N.C. Gen. Stat. § 8C-1, Rule 602 (1999).

The State argues that the trial court instructed the witness not to guess; therefore, Fabian was testifying to matters within his own personal knowledge. We hold that even if the trial court erred in admitting this testimony, the error was harmless. "Where improperly admitted evidence merely corroborates testimony from other witnesses, we have found the error harmless." *State v. Wynne*, 329 N.C. 507, 519, 406 S.E.2d 812, 818 (1991). Eddie previously testified that during the robbery Holadia asked him "why did you bring the undercover to my house", referring to a prior drug deal the two had with an undercover officer in 1995. The testimony of Fabian merely corroborates the testimony from Eddie.

We point out that Holadia failed to object when Clinton similarly testified that while Holadia and the other fellow stomped and pistol-whipped his brother, Eddie, Holadia "was talking about somethin' in the past or whatever." Clinton further testified that Holadia's statement was "about [the fact] he did eight months because of my brother or something." The benefit of an objection is lost when the same or similar evidence is later admitted without objection. *State v. Alford*, 339 N.C. 562, 570, 453 S.E.2d 512, 516 (1995). We overrule this assignment of error.

### C. Motion for Mistrial

[3] Holadia contends that because the State withheld exculpatory evidence favorable to defendant Cooper, he was entitled to a mistrial. The exculpatory evidence referred to is a third written statement made by Fabian recanting his earlier identification of Cooper as the second man present during the robbery. "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt, or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218 (1963).

The duty to disclose such evidence is applicable even though there has been no request by the accused. *United States v. Agurs*, 427 U.S. 97, 107, 49 L. Ed. 2d 342, 351 (1976). The duty to disclose encompasses impeachment evidence as well as exculpatory evidence.

*United States v. Bagley,* 473 U.S. 667, 676, 87 L. Ed. 2d 481, 490 (1985). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 87 L. Ed. 2d at 494.

" 'In determining whether the suppression of certain information was violative of the defendant's right to due process, the focus should not be on the impact of the undisclosed evidence on the defendant's ability to prepare for trial, but rather should be on the effect of the nondisclosure on the outcome of the trial.' " *State v. Smith,* 337 N.C. 658, 662, 447 S.E.2d 376, 378 (1994) (quoting *State v. Alston,* 307 N.C. 321, 337, 298 S.E.2d 631, 642 (1983)).

Defendants ultimately received the requested information at trial. The record reflects that defendant Cooper's attorney called Fabian as an adverse witness and questioned Fabian regarding his statement recanting his identification. Defendant Holadia's attorney was provided the same opportunity and declined to question the witness.

Holadia fails to argue how he was prejudiced and merely incorporates, by reference, the argument made by defendant Cooper in his brief. The State argues that there was no dispute as to Holadia's identity. All of the victims knew Holadia for some time and three of the four victims identified Holadia at trial. None of these victims wavered in their identifications of Holadia. Holadia admitted, in open court, his involvement in the robbery and assault after the verdict of guilty was read. The burden is on the defendant to show that the evidence not disclosed was material and affected the outcome of the trial. *Id.* We hold that Holadia failed to show he was prejudiced by the nondisclosure prior to trial, or the trial court's denial of his motion for a mistrial. This assignment of error is overruled.

### D. Motion to Dismiss

[4] Holadia assigns that the trial court erred in denying his motion to dismiss the charge of assault with a deadly weapon inflicting serious injury based on the insufficiency of the evidence. The jury convicted Holadia of assault with a deadly weapon inflicting serious injury. Holadia contends his conviction must be reversed, arguing that no substantial evidence demonstrates that he, individually or in concert with another, shot or intended to shoot Fabian Spencer. We conclude the evidence was sufficient for the jury's consideration and verdict.

The law concerning motions to dismiss is well settled. "If there is substantial evidence—whether direct, circumstantial, or both—to

support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988). Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion. *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991).

Holadia concedes that he failed to object to the trial court's instructions on acting in concert. Holadia has preserved the issue for plain error review by "specifically and distinctly" contending that the instruction amounted to plain error as required by N.C.R. App. P. 10(c)(4).

Our review of the evidence and instructions reveals no error and certainly no plain error. The theory of acting in concert, as properly defined by the trial court, requires a common purpose to commit a crime. *State v. Joyner*, 297 N.C. 349, 357, 255 S.E.2d 390, 395 (1979). Before the jury could apply the law of acting in concert and convict Holadia of assault with a deadly weapon inflicting serious injury, it had to find that Holadia and another had a common purpose to commit a crime. It is not strictly necessary that Holadia share the intent or purpose to commit the particular crime actually committed. *State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991). The correct statement of the law is found in the trial court's instructions:

> [I]f two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty of that crime, that is armed robbery, if the other commits the crime, but is also guilty of any other crime committed by the other person, such as assault with a deadly weapon inflicting serious injury in pursuance of the common purpose to commit armed robbery, or, as a natural or probable consequence thereof.

*See id.* (citing *State v. Westbrook*, 279 N.C. 18, 41-42, 181 S.E.2d 572, 586 (1971)).

The record reveals that Holadia acted in concert with another to commit the robbery. Both assailants entered the trailer with guns and threatened the occupants. Both assailants kicked, stomped, or pistol-whipped the victims. We conclude the evidence shows that the shooting of Fabian was part of a course of conduct by the two assailants to gain control over the occupants and rob them. We hold that the trial court did not error in submitting the charge, or denying defendant's motion to dismiss.

## IV. Defendant Cooper's Appeal

Cooper assigned as error the failure of the trial court to grant a new trial based upon Holadia's statements after the verdict, asserting Cooper was innocent. As a result of additional evidence from Holadia, defendant Cooper subsequently filed with this Court a motion for appropriate relief on 9 July 2001, arguing and extending arguments made in his brief. The State acknowledged that an evidentiary hearing was appropriate. On 21 September 2001, we remanded the case of defendant Cooper to the trial court for an evidentiary hearing. The evidentiary hearing was held on 22 January 2002 and the order was entered 14 February 2002. We now address those other assignments of error raised by defendant Cooper in his appeal.

### A. Jury Polling

[5] Cooper argues that the trial court committed reversible error in the polling of the jury in violation of N.C.G.S. § 15A-1238 and his constitutional right to a unanimous verdict guaranteed by Article I, Section 24 of the North Carolina Constitution. Cooper did not object to the manner in which the jurors were polled and has failed to raise plain error in his appeal. We, therefore, exercise our discretion pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure to determine whether defendant Cooper was denied his right to a unanimous verdict.

The North Carolina Constitution insures to each criminal defendant the right to a unanimous jury verdict: "No person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N.C. Const. Art. I, 24. Since 1877, our Courts have recognized that a defendant has a constitutional right, upon timely request, to have the jury polled as a corollary to his right to a unanimous verdict. *State v. Young*, 77 N.C. 498 (1877).

N.C.G.S. § 15A-1238 states that:

Upon the motion of any party made after a verdict has been returned and before the jury has dispersed, the jury must be polled. The judge may also upon his own motion require the polling of the jury. The poll may be conducted by the judge or by the clerk by asking each juror individually whether the verdict announced is his verdict. If upon the poll there is not a unanimous concurrence, the jury must be directed to retire for further deliberations.

N.C. Gen. Stat. § 15A-1238 (1999). The purpose of polling the jury is:

to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned, and thus to enable the court and the parties to ascertain with certainty that a unanimous verdict has been in fact reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented.

*Davis v. State*, 273 N.C. 533, 541, 160 S.E.2d 697, 703 (1968) (emphasis in original omitted).

In this case, the transcript reflects that the jury returned and announced its unanimous verdict of guilty as to defendant Holadia and then announced its unanimous verdict of guilty as to defendant Cooper. As the guilty verdicts pertaining to Cooper were read, Holadia stated in the presence of the jury: "Your Honor, he is not guilty; I am guilty. He is not guilty. I know for a fact. I did—I did commit these robberies, and he is not guilty." Defendant Cooper then timely requested a polling of the jury.

During the initial poll of the jury the following appears of record:

THE COURT: [Juror No. 12], as to Demetrius Cooper, you returned as the jury's unanimous verdict . . . the Defendant was guilty as charged . . . . Was that the verdict of the jury . . . ?

JUROR NO. 12: That was the verdict of the jury, yes.

THE COURT: Was it your verdict?

JUROR NO. 12: No.

THE COURT: It was not your verdict?

. . . .

JUROR NO. 12: How are we as the jury supposed to react to what has happened? I mean, how would you direct us as the judge to what we are supposed to do?

. . . .

THE COURT: Your verdict is supposed to be based upon the evidence that was presented from the witness stand and the law.

JUROR NO. 12: What we are hearing in court is not to be considered as evidence?

THE COURT: That's correct. You disregard that. Now, does the jury want to retire and reconsider its verdict on this? I am prepared to

go forward and ask you whether the verdict that you returned is your verdict.

JUROR NO. 12:  Then I would say for me personally I would need to reconvene for the issue with Mr. Cooper.

THE COURT:  Keeping in mind what I just told you that what's been said here is not evidence?

JUROR NO. 12:  It's not evidence?

THE COURT:  No, sir. It's not given under oath at this trial. It's not evidence. You are not to consider it. You all want to retire and discuss the matter, or do you want me to continue taking the poll?

JUROR NO. 10:  I think we should retire and discuss the matter.

JUROR NO. 12:  I think we should retire and discuss the matter.

. . . .

The jury retires to the jury room at 2:30 p.m. The jury knocks on the jury room door at 2:33 p.m.

THE COURT:  Ask them to come out and have a seat.

BAILIFF:  They want to continue to deliberate.

THE COURT:  Ask them to come out and have a seat, Sheriff.

. . . .

THE COURT:  Now, I'm going to ask you for the verdict that you unanimously reached in the jury room and whether at the time that you assented to that and reached that unanimous verdict that you assented to it. That's what I'm going to ask you. Do you understand my question . . . .

JUROR NO. 12:  Uh-huh.

THE COURT:  With regard to Demetrius Cooper, you returned as the jury's unanimous verdict . . . guilty . . . . Was that the jury's unanimous verdict?

JUROR NO. 12:  Yes, it was.

THE COURT:  At the time it was reached, did you assent thereto?

JUROR NO. 12:  Yes, I did.

The trial court proceeded to ask Jurors Nos. 1-6 substantially the same questions and each of them answered in the affirmative. Beginning with Juror No. 7, the court asked the following questions:

> THE COURT: . . . you've returned as the jury's unanimous verdict that the Defendant, with regard to the Demetrius Cooper, that the Defendant was guilty . . . . Was that your verdict?
>
> JUROR NO. 7: Yes.
>
> THE COURT: Do you still assent thereto?
>
> JUROR NO. 7: Yes.

The trial court asked Jurors Nos. 8-11 substantially the same questions as was asked of Juror No. 7, and each of the jurors answered in the affirmative.

> THE COURT: Does the jury still assent to its verdict? All right. Anybody dissent? Raise your hand. Nobody dissents. All right.

Our Supreme Court decided that a criminal defendant's right to have the jury polled is the right to have questions presented to the jurors individually, concerning ". . . whether each juror assented and still assents to the verdict tendered to the court." *State v. Boger*, 202 N.C. 702, 704, 163 S.E. 877, 878 (1932). In assuring the unanimity of the verdict, our Courts are concerned with each juror's assent to the verdict at two different time periods. *State v. Asbury*, 291 N.C. 164, 170, 229 S.E.2d 175, 178 (1976). "Because of the possibility of improper influence and coercion in the jury room, the questions must be designed to find out if the juror assented in the jury room and still assents in open court to the jury verdict." *Id.*

Here, the trial court erred in questioning the Foreman and Jurors Nos. 1-6 whether they assented in the jury room and failing to determine whether they still assented to the verdict in open court. The transcript reveals that some of the jurors were uncertain as to whether they still assented to the verdict and thereby requested to further deliberate the matter.

The State contends that the inquiry by the trial court, to the jury as a group, as to whether the jury still assented to its verdicts was sufficient. We disagree. Defendant Cooper was entitled as a matter of right to insist that a specific question be addressed to and answered by each juror in open court, as to whether he assented to the verdict.

*Boger*, 202 N.C. at 704, 163 S.E. at 878. The questioning of the jury collectively, and having all the jurors respond collectively, by raising their hand, failed to meet the statutory mandate that the jury be polled individually. For error in the denial of this right, defendant Cooper is entitled to a new trial.

No error as to defendant Holadia, docket nos. 99 CRS 386, 387, and 389.

New trial as to defendant Cooper, docket nos. 99 CRS 463, 464, and 465.

Judges WYNN and HUNTER concur.